878 So.2d 786 (2004)
Vivian C. WHITE on Behalf of the Minor Child James A. Young
v.
ENTERGY GULF STATES, INC., Minnesota Mining and Manufacturing, Westinghouse Electric Corporation and Westinghouse Staffing Services, Inc.
No. 2003-CA-2074.
Court of Appeal of Louisiana, Fourth Circuit.
June 16, 2004.
*787 Frank Tomeny, III, Jason L. Melancon, Tomeny & Fisher, Baton Rouge, LA, for Plaintiff/Appellant.
Richard E. Sarver, Celeste Coco-Ewing, Barrasso, Usdin, Kupperman, Freeman & *788 Sarver, LLC, News Orleans, LA, for Defendant/Appellee, 3M Company.
Eric Shuman, McGlinchey Stafford, APLC, New Orleans, LA, for Defendants/Appellees, Viacom, Inc. and Westinghouse Electric Company, L.L.C.
Joseph K. West, Kenneth P. Carter, Endya E. Delpit, New Orleans, LA, for Defendant/Appellee, Entergy Gulf States, Inc.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD).
Judge EDWIN A. LOMBARD.
In this wrongful death and survival suit, Vivian C. White, on behalf of Delesia White's minor child ("the plaintiff"), appeals the judgment of the trial court sustaining the defendants' peremptory exception of prescription. For the reasons that follow, we reverse and remand.

Pertinent Facts
Delesia White died from lung disease on March 23, 1999. As an employee at the Entergy River Bend Station facility in St. Francisville, Louisiana, between 1990 and 1992, Ms. White's duties included the disposal of the fluorescent light bulbs. The plaintiff alleges that Ms. White's lung disease was caused by contact with beryllium and other contaminants including, but not limited to, those contained in fluorescent light bulbs. Upon her death, the plaintiff (Ms. White's sister) became custodian of Delesia White's minor son, James A. Young.
On March 22, 2000, based on diversity of citizenship, 28 U.S.C. § 1332, the plaintiff filed suit against Entergy Gulf States, Inc. (hereinafter "Entergy"), Minnesota Mining and Manufacturing (hereinafter "3M"), Westinghouse Electric Corporation (succeeded by Viacom, Inc.) and Westinghouse Staffing Services, Inc., (succeeded by Westinghouse Electric Company, L.L.C.) (hereinafter collectively "Westinghouse"), in the United States District Court for the Middle District of Louisiana and service was made on the defendants on March 31, 2000.
Entergy moved to dismiss the action in federal court claiming the court lacked jurisdiction but before determining the jurisdictional issue, the federal court placed the action on "administrative stay" and the plaintiff filed the instant action in the Civil District Court for the Parish of Orleans on October 18, 2000. The defendants responded to the state action by filing exceptions of prescription, improper venue, no cause of action, vagueness and lis pendens, and a motion to stay.
On September 15, 2003, the trial judge in the state action granted the exception of prescription in favor of the defendants and dismissed the action. The trial judge found that although plaintiff's federal action based on diversity jurisdiction was filed within the prescriptive period, "diversity of citizenship as required under 28 U.S.C. § 1332 does not exist and therefore, the federal court lacked subject matter jurisdiction." Accordingly, the trial judge held because the plaintiff's original complaint was filed in an incompetent court and service of process of process was not made until after the prescription date, the plaintiff's claim had prescribed under La. Civ.Code art. 3462. The trial judge declared the remaining exceptions filed by defendants moot.
The plaintiff filed this devolutive appeal, raising two assignments of error.

Discussion
The plaintiff argues that the federal court was a court of competent jurisdiction because the principal place of business for *789 Entergy is in Texas, thereby establishing diversity jurisdiction in the federal court. The plaintiff maintains that pursuant to her search of the Louisiana Secretary of State website on March 16, 2000, Entergy failed to identify any Louisiana address for it's place of business, but identified 350 Pine Street, Beaumont, Texas as its domicile. Accordingly, the plaintiff submits that she was reasonable in relying upon the public records in concluding that Entergy's citizenship, for purposes of diversity jurisdiction, was Texas.
Appellant further argues that because of her detrimental reliance on the Entergy's representations made to the Louisiana Secretary of State, the doctrine of equitable estoppel should have been applied by the trial court. In support of her position, appellant cites Roberson v. Lafayette Oilman's Sporting Clays Shoot, Inc., XXXX-XXXX (La.App. 3 Cir. 4/30/03), 845 So.2d 1267. In Roberson, the plaintiff filed a personal injury action in St. Martin Parish based upon the Breaux Bridge, Louisiana address obtained from the Louisiana Secretary of State. Since the entire city of Breaux Bridge fell within St. Martin Parish, the plaintiff concluded that St. Martin Parish was the parish of proper venue. After suit was filed, however, the defendant filed an exception of venue, claiming that the business' physical location was in Lafayette Parish and that it only received mail at the Breaux Bridge address. The court in Roberson found that the plaintiff detrimentally relied upon the information on file with the Secretary of State and, as such, applied the doctrine of equitable estoppel in favor of plaintiff.
Finally, the plaintiff relies on assertions made by Entergy in two recent unpublished federal court cases wherein Entergy claimed that their principal place of business was in Texas. As such, the plaintiff submits that Entergy cannot now maintain in good faith that its principal place of business is Louisiana.
In response to this appeal, Entergy argues that based on the information provided by the Secretary of State, and attached to the plaintiff's memorandum in opposition as "Exhibit A," the plaintiff should have been on notice that diversity of citizenship did not exist between the plaintiff and Entergy. Specifically, Entergy argues that the Secretary of State information relied on by the plaintiff at the time her lawsuit was filed does not specifically list the principal place of business for Entergy; and, therefore, the plaintiff should have been on notice to inquire further.
Westinghouse and 3M similarly argue that the plaintiff's petition is prescribed on its face and that prescription was not interrupted because the federal court lacked diversity. Westinghouse and 3M further submit that the plaintiff's argument of equitable estoppel does not bar either of them from asserting prescription because there were no allegations that either Westinghouse or 3M did anything upon which the plaintiff justifiably relied.

Law and Analysis:
Prescription is interrupted when an action is commenced in a court of competent[1] jurisdiction and venue or, if the action is commenced in an incompetent court or improper venue, as to a defendant served by process within the prescriptive period. La. Civil Code art. 3462. The applicable prescriptive period in this wrongful death and survival action is one year from the date of decedent's death. *790 La. Civ.Code arts. 2315.1, 2315.2. Accordingly, the suit has prescribed if the federal court was a court of competent jurisdiction.
Louisiana case law has also established that a court lacking subject matter jurisdiction is not a court of competent jurisdiction. Venterella v. Pace, 180 So.2d 240 (La.App. 4 Cir.1965). In Venterella, the state court held that federal court is not a court of competent jurisdiction when the federal court lacks subject matter jurisdiction over the matter. In Venterella, as here, the plaintiff filed a lawsuit in federal court within the prescriptive period invoking federal jurisdiction. However, the federal court lacked subject matter jurisdiction over the matter because diversity was lacking. The state court held that, because federal subject matter jurisdiction was lacking, federal court was not a court of competent jurisdiction. As a result, filing the federal court action did not interrupt prescription.
The instant case is distinguished from Venterella on one very significant point. In Venterella, the federal court dismissed its case after a determination that diversity jurisdiction was lacking. In the present case, however, the federal court has not ruled on jurisdiction. Instead, the federal court proceeding was stayed, pending the outcome of this state court proceeding. The only finding that the federal court lacked jurisdiction in this case comes from the state court action. After a review of the trial court proceedings, we find that the record was insufficient for the trial court to make such a factual determination as to whether the federal court was a court of competent jurisdiction. Significantly, the only competent evidence presented to the trial court as to Entergy's principal place of business was the documentation from the Louisiana Secretary of State. Although Entergy provided the trial court with two unpublished opinions of federal court cases finding Entergy to be a citizen of Louisiana, we do not find that evidence to be proper or controlling.
The determination of a corporation's principal place of business for purposes of diversity jurisdiction does not hinge on a single factor. Rather, it depends on a myriad of objective factors. Howery v. Allstate Ins. Co., 243 F.3d 912, 920 (5 Cir. 2/28/01). Pursuant to 28 U.S.C. § 1332, a "corporation shall be deemed to be a citizen of any State in which it has been incorporated and of the State where it has its principal place of business." The Fifth Circuit "applies a `total activity' test to determine the principle place of business." Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc., 138 F.3d 160, 164 (5 Cir.1998). To determine citizenship for the purposes of diversity, courts look to "the nature, location, importance, and purpose of a corporation's activities and the degree to which those activities bring the corporation into contact with the local community." Id.
The procedural posture of this case wherein the state trial court is called upon to determine the existence of federal diversity jurisdiction is problematic. Nonetheless, considering the limited factual record before the trial court and the trial court's failure to make the required analysis as described above to determine Entergy's principal place of business, we find that the trial court erred in ruling that the federal court was not a court of competent jurisdiction.
Finally, we do not find that the plaintiff's argument for equitable estoppel has merit in this matter. In the cases cited by appellant, it is argued that the filings with the Secretary of State are proof positive of a corporation's address and location and can be relied upon to *791 establish venue within the state. Roberson; Major v. Telerecovery of Louisiana, Inc., 99-1935 (La.App. 4 Cir. 11/17/99), 748 So.2d 523. In contrast, the instant case addresses federal diversity jurisdiction, not venue, and in our opinion, the application of equitable estoppel would be inappropriate in this matter. Specifically, in cases involving federal diversity jurisdiction, where the federal court is a court of limited jurisdiction, it is the plaintiff's responsibility to select the correct forum. Sansone v. Louisiana Power & Light Company, 164 So.2d 151 (La.App. 1 Cir.1964); Knight v. Louisiana Power & Light Company, 160 So.2d 832 (La.App. 4 Cir.1964). As heretofore explained in the "total activity test," the determination of a corporation's principle place of business involves many factors. For appellant to rely solely on the limited information provided by the Secretary of State and not investigate further to ascertain the appropriate forum was appellant's error.
Equitable estoppel has been defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance. Thus, there are three elements of estoppel: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. Elliott v. Catahoula Parish Police Jury, 02-9 (La.App. 3 Cir. 5/8/02), 816 So.2d 996, 997 (quoting Wilkinson v. Wilkinson, 323 So.2d 120, 125 (La.1975)). In Morris v. Friedman, 94-2808 (La.11/27/95), 663 So.2d 19, 25, the Louisiana Supreme Court further elaborated on this issue: "[A] party having the means readily and conveniently available to determine the true facts, but who fails to do so, cannot claim estoppel. Further, estoppels are not favored in our law, and properly apply only as to representations of fact.... Finally, `[e]quitable considerations and estoppel cannot be permitted to prevail when in conflict with the positive written law.'" Taking all the above rules of law into consideration, we find that the doctrine of equitable estoppel is not applicable in this specific case.

Conclusion
For the reasons stated herein, we reverse the trial court's grant of the peremptory exception of prescription and remand for proceedings consistent with this opinion. Specifically, before ruling on the issue of prescription, the trial court must make further inquiry into Entergy's principal place of business in order to correctly ascertain whether the federal court was a court of competent jurisdiction. Only then can a proper determination be made as to whether appellant's case has prescribed.
REVERSED AND REMANDED.
McKAY, J., concurs in the result.
MURRAY, J., dissents with reasons.
KIRBY, J., dissents for the reasons assigned by J. MURRAY.
MCKAY, J., CONCURS IN THE RESULT.
I concur with the majority and would reverse and remand this matter to the trial court. However, I disagree with the majority's holding that equitable estoppel does not apply in this case. I believe it was reasonable for the appellant to rely on information provided by the Secretary of State regarding Entergy's principal place of business.
MURRAY, J., DISSENTS WITH REASONS.
In this wrongful death and survival action, the applicable prescriptive period is *792 one-year from the date of the decedent's death. La. C.C. arts. 2315.1, 2315.2. Although the party pleading prescription ordinarily has the burden of proof, the burden is shifted to the plaintiff when the petition on its face reveals that prescription has run. Lima v. Schmidt, 595 So.2d 624, 628 (La.1992). Such is the case here. The decedent, Delesia White, died on March 23, 1999, but the instant suit was not filed until October 18, 2000, more than nineteen months later. Plaintiff thus had the burden of establishing that prescription was interrupted.
Attempting to meet that burden, Plaintiff relies upon Louisiana Civil Code Article 3462, which provides:
Prescription is interrupted when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue. If the action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period.
La. C.C. art. 3462. Because it is undisputed that Defendants were not served with the federal complaint until after the prescriptive period had run, prescription was not interrupted under Article 3462 unless the federal court was a court of competent jurisdiction. A court of competent jurisdiction is defined as "a court which has jurisdiction over the subject matter of, and is the proper venue for, the action or proceeding." La. C.C.P. art. 5251(4). By definition, a federal court that lacks subject matter jurisdiction is not a court of competent jurisdiction. Venterella v. Pace, 180 So.2d 240, 243 (La.App. 4 Cir.1965).
In Venterella, the court noted that the facts before it paralleled those presented in three earlier cases; the court described the familiar factual scenario presented in the earlier trio of cases as follows:
Suits were brought in United States District Courts in Louisiana, alleging jurisdiction based on diversity of citizenship, on actions ex delicto against a foreign corporation which had its principal place of business in Louisiana. The actions were filed within a year of the alleged torts, but in each case service of the citations was not effected until the one-year period had run. After the suits were dismissed in the federal courts for lack of jurisdiction, the plaintiffs filed their actions in Louisiana state courts. In each case, pleas of prescription were upheld and judgment entered in favor of the defendants. The judgments were all affirmed by the respective Courts of Appeal, and writs of certiorari and review were denied in all three cases by the Supreme Court.
Venterella, 180 So.2d at 243. Presented with this same familiar factual scenario, the Venterella court held that "the plain meaning of the statutory language and the jurisprudence of our courts emphatically support the trial judge's conclusion that the federal court was not a court of competent jurisdiction and that plaintiffs' cause of action prescribed." Id. at 242. Defendants contend that this case is analogous to Venterella and that the trial court correctly found the federal court was not a court of competent jurisdiction.
In this case, as Plaintiff emphasizes, the federal district court did not decide the jurisdictional issue. However, the trial court in granting the prescription exception did decide the jurisdictional issue. Finding the federal court was not a court of competent jurisdiction, the trial court reasoned that "diversity of citizenship as required under 28 U.S.C. § 1332 does not exist and therefore, the federal court lacked subject matter jurisdiction."
*793 On appeal, Plaintiff asserts two interrelated equitable arguments in support of her position that the trial court's finding that the federal court lacked jurisdiction was error; to wit: (i) reasonable reliance on EGS' representations regarding its principal place of business as reflected on the Louisiana Secretary of State's office's website, and (ii) equitable estoppel.[1] EGS counters that its representations reflected on the website that Plaintiff allegedly relied upon when she filed her federal complaint were correct. EGS notes that its principal place of business was listed on the Secretary of State's website, and Plaintiff should have been on notice to inquire further. EGS also argues that a corporation's representation's are not controlling of its principal place of business for purposes of diversity jurisdiction.
I agree with the majority's finding that Plaintiff's equitable estoppel argument is unpersuasive. As the majority points out, both cases Plaintiff cites in support of that argument are procedurally distinguishable because they involved venue issues. Roberson v. Lafayette Oilman's Sporting Clays Shoot, Inc., XXXX-XXXX (La.App. 3 Cir. 4/30/03), 845 So.2d 1267, writ denied, XXXX-XXXX (La.9/26/03), 854 So.2d 370, and Major v. Telerecovery of Louisiana, Inc., 99-1935 (La.App. 4 Cir.11/17/99), 748 So.2d 523. The concepts of venue and subject matter jurisdiction are vastly different. Venue means the parish in which an action may be brought; whereas, subject matter jurisdiction means the power of a court to hear a particular dispute. A state court is statutorily authorized to cure a venue problem by invoking La. C.C.P. art. 121, which provides that "[w]hen an action is brought in a court of improper venue, the court may dismiss the action, or in the interest of justice transfer it to a court of proper venue." La. C.C.P. art. 121; see Roberson, XXXX-XXXX at p. 8, 845 So.2d at 1272. By transferring the case, a court is able to alleviate the potential prescription problem that dismissing the case would create for the plaintiff. A court, however, has no ability to cure the prescription problem presented when a plaintiff files suit in a court that lacks subject matter jurisdiction. When a plaintiff selects a forum that lacks subject matter jurisdiction, "the fault is plaintiff's and in such instances regardless of the reason for delay, if service is not obtained within a year, prescription will run on plaintiff's claim." Sansone v. Louisiana Power & Light Co., 164 So.2d 151, 154 (La.App. 1 Cir.1964). Such is the case here. Moreover, contrary to Plaintiff's contentions, it is well settled that "jurisdiction cannot be acquired by estoppel." Mahoney v. Northwestern Bell Tel. Co., 377 F.2d 549 (8th Cir.1967)(collecting cases).
Nor am I persuaded by Plaintiff's other argument regarding her reasonable reliance on EGS' representations regarding its principal place of business that were reflected on the Secretary of State's website. Particularly, Plaintiff cites the fact that on March 16, 2000, the date she filed her federal complaint, that website reflected EGS' domicile as 350 Pine Street, Beaumont, Texas. Given that representation, Plaintiff contends she was justified in concluding that EGS' citizenship, for purposes of diversity jurisdiction, was Texas. Moreover, Plaintiff argues, based on the website, that EGS' failure to identify any address for its principal place of business or a principal business address in Louisiana violated La. R.S. 12:104(B)(1). I find *794 these arguments unpersuasive for two reasons.
First, a corporation's "statements made to the secretary of state of a particular state are not binding for purposes of determining subject matter jurisdiction." Harris v. Black Clawson Co., 961 F.2d 547, 550 (5th Cir.1992). Plaintiff's reliance on the Louisiana Secretary of State's computer records to establish that EGS' principal place of business was not in Louisiana is thus misplaced. Those computer records that the Plaintiff introduced merely reflect EGS' compliance, or noncompliance (as Plaintiff contends), with La. R.S. 12:304(4) and 308 A(2). Those statutes require foreign corporations doing business in this state to report both "[t]he address of the principal office of the corporation in this state" and "[a] registered office, which may, but need not, be the same as its business office in this state." La. R.S. 12:304(4) and 308 A(2). Those computer records are of little, or no, assistance in resolving the jurisdictional issue presented.
Second, "[t]he question of what constitutes a corporation's principal place of business within the meaning of the [diversity jurisdiction] statute is essentially one of fact to be determined upon the circumstances of each particular case." Fletcher Cyc. Corp. § 432.10 (Perm. Ed.). In making that determination, the federal jurisprudence has developed various tests. In the federal Fifth Circuit, the test applied is the "total activity test." Howery v. Allstate Ins. Co., 243 F.3d 912, 920 (5th Cir.2001)(citing the seminal case, J.A. Olson Co. v. City of Winona, Miss., 818 F.2d 401, 404-10 (5th Cir.1987)). That test is a synthesis of the two traditionally applied approaches: (i) the nerve center approach  which focuses on where a corporation's executive and administrative functions are controlled; and (ii) the place of activity approach  which focuses on where its company's everyday business activities are performed. The difference between the two traditional approaches, however, has been characterized as "largely linguistic." Mahoney v. Northwestern Bell Tel. Co., 258 F.Supp. 500, 502 (D.C. Neb.1966), aff'd, 377 F.2d 549 (8th Cir.1967). The jurisprudence has recognized that the two traditional approaches are not inconsistent, but rather complimentary. Id. Ultimately, the question is not which approach to apply, but rather "which consideration, on the totality of the evidence, based on the totality of the facts, predominates." State Auto. Fin. Acquisition Corp. v. State Auto. Mut. Ins. Co., 289 F.Supp.2d 906, 910 (S.D. Ohio 2003).
A unique situation is presented by the procedural posture of this present case in that neither the federal court nor the trial court expressly performed the required analysis for resolving the decisive jurisdictional issue of EGS' principal place of business. To resolve the prescription issue presented in this appeal, which turns on whether the federal court is a court of competent jurisdiction, I believe it is necessary for this court to conduct that analysis.
The burden of proof on the jurisdictional issue was on Plaintiff for two reasons: (1) she is the party seeking to establish that jurisdiction was proper in federal court, and (2) her state court petition is prescribed on its face. Attempting to satisfy her dual burden of proof, Plaintiff relies solely on the Louisiana Secretary of State's computer records and two unpublished federal decisions, discussed below, in which EGS asserted its principal place of business was in Texas. As discussed above, Plaintiff's reliance on the Secretary of State's computer records to establish jurisdiction is misplaced.
*795 Apparently the trial court based its decision that the federal court lacked jurisdiction on the two unpublished federal decisions, and Defendants argue that those two federal decisions are dispositive. Plaintiff acknowledges that those two decisions held that EGS' principal place of business was in Louisiana, yet argues that EGS should be bound by its public pronouncements to the contrary in those two federal cases.[2]
Those two federal decisions are Lafayette City-Parish Consol. Gov't & Lafayette Utilities Systems v. Entergy Gulf States, Inc., 99-1919 (W.D. La.2000), and Spell v. Entergy Gulf States, Inc., 97-1228 (W.D. La.1998). In both Lafayette and Spell, the same procedural scenario was presented. EGS was sued in a Louisiana state trial court. EGS responded by removing the case to federal court based on diversity jurisdiction, asserting that its principal place of business was in Texas. Granting the plaintiff's motion to remand, the federal court in both cases applied the total activities analysis and found EGS' principal place of business to be in Louisiana.
Although I agree with Plaintiff that those two unpublished decisions are not legally controlling, I find it appropriate to rely upon the facts outlined in those cases. Both parties relied upon those two decisions in the trial court.[3] Plaintiff does not contend that the situation on March 2000, when she filed her federal suit, was any different than it was when those two cases were decided in 1998 and 2000. See Charles A. Wright and Arthur R. Miller & Edward H. Cooper, 13B Federal Practice & Procedure Jurisdiction and Related Matter 2d, § 3608 (2003 Supp.)(noting that diversity jurisdiction is determined by examining the parties' citizenship at the time the action is commenced). Indeed, Plaintiff has implicitly acknowledged that the facts regarding EGS' principal place of business at the time she filed her federal suit were as presented in those two cases. At the prescription hearing before the trial court, Plaintiff's counsel admitted that he believed, if forced to decide the jurisdictional issue, the federal magistrate judge would find subject matter jurisdiction lacking in this case.
I believe it is appropriate, given the unique situation presented in this case, for this court to conduct its own analysis of the jurisdictional issue, relying on the facts recited in those two federal decisions. Although it would have been more appropriate for the federal district court to decide this issue of federal diversity jurisdiction, I disagree with the majority's decision to remand this matter to the trial court for another evidentiary hearing. Indeed, the majority's decision to remand this matter overlooks the fact that Plaintiff's counsel has virtually conceded the inability to put forth any additional facts in support of Plaintiff's position. Given that the federal court granted the request to place the *796 case on administrative stay and given that the district court on remand will be in no better position that we are to resolve this issue, I find it appropriate to resolve it.
As noted above, the applicable test applied in the federal Fifth Circuit is the total activities test. That test synthesizes the two traditional approaches  the nerve center and place of activities approach. That test considers all relevant factors and focuses on "the nature, location, importance, and purpose of a corporation's activities and the degree to which those activities bring the corporation into contact with the local community." Howery, 243 F.3d at 920.
Although the factual determination of a corporation's principal place of business must be made on a case-by-case basis, the federal courts in applying the total activities analysis have noted that three generalizations can be made. First, a corporation with far-flung activities will generally have its principal place of business at its sole nerve center. Second, a corporation with its sole operations in one state and its executive officers in another state will generally have its principal place of business in the state in which its operations are located. Third, when the corporation is passive and its "brain" is in another state, the situs of its brain is given greater significance. Olson, 818 F.2d at 410. Ultimately, however, a corporation's principal place of business for purposes of diversity jurisdiction "is a fact question that follows no single inflexible test dependent solely upon the situs of the nerve center or upon the situs of activities of the corporation." Olson, 818 F.2d at 406.[4]
To resolve the jurisdictional issue, I would filter the facts, as outlined in the two federal decisions, through the myriad of factors the courts have utilized in applying both the nerve center and the place of activity approaches. Starting with the nerve center approach, also called the "home office" approach, the familiar litany of factors utilized include:
[1] from where the corporation's highest level corporate policy is made; [2] where the corporation's officers reside and work; [3] where the corporation's financial and administrative offices are; [4] where bank and accounting records are kept; [5] from where correspondence, orders, and collections are made; [6] from where corporate tax returns are filed; [7] where the board of directors meets; and [8] the corporation's purported headquarters.
Richard A. Simon, Note, Attributing Too Much: The Fifth Circuit Perverts the Scope of Diversity Jurisdiction, 19 Cardozo L. Rev. 1857, 1864, n. 49 (1998).
Applying those factors to the facts, it is significant that following EGS' 1993 merger with Entergy, EGS's headquarters, by all indications, shifted from Beaumont, Texas to New Orleans, Louisiana. Since 1994 all EGS' corporate minutes have been kept in the New Orleans office; before *797 1994, its minutes were kept in Beaumont, Texas. Also evidencing its shift from its former nucleus in Texas, since the beginning of 1994, no board meetings have been held in Texas, but twelve have been scheduled in Louisiana.
EGS' corporate officers reside and work primarily in Louisiana.[5] Its Chairman of the Board and Chief Executive Officer are located in New Orleans. Although EGS has accounting, legal, engineering, environmental, construction, and purchasing offices in both Texas and Louisiana, its Chief Accounting Officer, Vice-President of Customer Accounts, and Vice-President of Human Resources are all located in Louisiana, and they exercise authority in their respective fields over EGS' Texas operations. EGS' collections are made in Louisiana, where its customer remittance center is located. Finally, EGS' corporate representative stated at a deposition in Spell that "New Orleans is the headquarters." I would thus conclude that the "nerve center" approach establishes EGS' principal place of business is in Louisiana.
The second approach is the place of activity approach. When the dispute is over which of two or more states is a corporation's place of activity, it is necessary to engage in "a general survey of the corporation's activities at each place in respect to their character, importance and amount." Fletchers, supra at § 4238.10. Under this approach, the following factors are examined to determine the corporation's place of activity:
[1] where the actual activity of a corporation takes place, whether it be manufacturing, mining, or sales; [2] from where the day-to-day activities are controlled; [3] where most of the corporation's employees work; and [4] from where the most of the corporation's income is derived.
Simon, supra at 1864, n. 50.
The business activity in which EGS engages is generating, supplying, and servicing electricity. As of the time of the Lafayette decision (in 2000), seventy-seven percent of EGS' total tangible assets were located in Louisiana. Most of EGS' employees, albeit a small majority (843 employees in Louisiana as opposed to 754 in Texas),[6] worked in Louisiana. EGS derived the majority of its income from Louisiana; fifty-nine percent of its gross retail revenues were generated in this state. Given these facts, I would conclude, as did the federal court in Lafayette, that the place of activities test supports a finding that Louisiana is EGS' principal place of business.
Summarizing, Plaintiff's arguments on appeal are better described as pleas to equity, based on EGS' representations, than true attempts to establish that Louisiana was not EGS' principal place of business when the federal suit was commenced. Federal subject matter jurisdiction, however, cannot be established by estoppel. Based on the above analysis, I would conclude that EGS' principal place of business at the time Plaintiff commenced her federal suit was in Louisiana *798 and that, as in Venterella, the federal court was not a court of competent jurisdiction. Because EGS' principal place of business is in Louisiana, the federal court was not a court of competent jurisdiction. For the reasons, I would affirm the trial court's decision maintaining Defendants' exception of prescription.
NOTES
[1] A court of competent jurisdiction is one in which the court "has jurisdiction over the subject matter of, and is the proper venue for, the action or proceeding." La.Code Civ. Proc. art. 5251(4).
[1] Westinghouse and 3M contend that Plaintiff's argument of equitable estoppel does not bar either of them from asserting prescription because there were no allegations that either Westinghouse or 3M did anything upon which Plaintiff justifiably relied.
[2] Contrary to Plaintiff's contention regarding EGS' representations in those federal cases that its principal place of business is in Texas, the jurisprudence holds that a party's intentions, when contrary to the factual reality, are "entitled to little weight when in conflict with facts." Hendry v. Masonite Corp., 455 F.2d 955, 956 (5th Cir.), cert. denied, 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972).
[3] Plaintiff relied on these two decisions in support of two contentions: (1) that EGS had pronounced in two prior judicial proceedings its position that its principal place of business was in Texas, and (2) that EGS' "nerve center" was in New Orleans, Louisiana, thus making venue proper there. Entergy relied on these two decisions in support of its position that its principal place of business was in Louisiana, despite the fact it unsuccessfully asserted a contrary position in those two cases.
[4] Applying the three Olson generalizations to EGS's operations, the two unpublished federal decisions differed on whether it could be said that EGS has a "sole" nerve center in any one state. The court in Spell found the facts lead to the "inescapable conclusion that EGS's [sic] nerve center is in New Orleans, Louisiana." The court in Lafayette noted that while Louisiana may not be EGS' "sole" nerve center, it appears to be its `primary headquarters" and thus the "nerve center" test weighs in favor of Louisiana being EGS' principal place of business." The Spell court stated that it could not "say that the operations in one state so predominate as to make that state the primary center of activity." That court, however, found EGS' nerve center clearly to be Louisiana given that "[t]he company is controlled and managed from the New Orleans, Louisiana office." Regardless, both federal courts concluded that Louisiana was EGS' principal place of business.
[5] At the time of the Lafayette decision (in 2000), nineteen of EGS's twenty-two officers and directors resided and worked in Louisiana. At the time of the Spell decision (in 1998), sixteen of the twenty officers and directors resided and worked in Louisiana.
[6] At the time of the earlier Spell decision (in 1998), 1,023 EGS employees worked in Texas and 970 worked in Louisiana. At that point in time, the federal court noted that EGS had significant operations in Texas and Louisiana, as well as in Mississippi and Arkansas. Nonetheless, the Spell court found it significant that "more of EGS's [sic] revenue is generated in Louisiana, rather than Texas."