IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 15, 2007

Charles R. Fulbruge III
Clerk

_____

No. 06-30105

In The Matter of : ARK-LA-TEX TIMBER CO., INC.,

DEBTOR

------------------------------------------

PEOPLES STATE BANK,

Appellant,

versus

GENERAL ELECTRIC CAPITAL CORP.; ARK-LA-TEX
TIMBER CO., INC.; and JOHN CLIFTON CONINE,

Appellees.

Appeal from the United States District Court for
the Western District of Louisiana
_____


Before GARWOOD, DENNIS, and OWEN, Circuit
Judges.[*]

_____

  [*]  The opinion reported at 477 F.3d 295 (5th Cir. 2007) is
withdrawn, and the following opinion is substituted therefor.

1

DENNIS, Circuit Judge.

In this case, we review decisions by the bankruptcy and district courts resolving the competing claims of two secured creditors, Peoples State Bank ("Peoples State") and General Electric Capital Corporation ("General Electric"), to proceeds resulting from an auction of non-titled movables[1] formerly owned by a bankrupt corporation, Ark-La-Tex, and its two related juridical persons, Alba Source, L.L.C. and Pearl Equipment Company. We affirm.

General Electric brought this suit in Louisiana state court to recover sums delivered by the auctioneer to Peoples State but allegedly not

---

[1] In civil law systems, "things" are divided into movables and immovables, as opposed to the common law system where they are divided into personal and real property. 2 A.N. Yiannopolous, Louisiana Civil Law Treatise: Property, § 106 (2001). Movables are a residual category of things. Id. (citing La. Civ. Code Ann. art. 475, which provides, "All things, corporeal or incorporeal, that the law does not consider as immovables are movables."). The term "non-titled movables" in this opinion merely refers to movables whose titles are not required, under Louisiana law, to be registered.

due to it.  The defendant, Peoples State, removed the case to the United States District Court for the Western District of Louisiana.  The district court thereafter transferred the case to the Bankruptcy Court that had ordered the auction sale of the movables  formerly owned by the bankruptcy debtor and its affiliated juridical persons.

## Facts and Procedural History

The issues in this case revolve around three Louisiana juridical persons,[2] Ark-La-Tex Timber Company, a bankrupt Louisiana corporation, and its two related[3] Louisiana juridical persons, Alba Source, L.L.C. ("Alba") and Pearl Equipment Company, ("Pearl").  In order to obtain financing for their business ventures, each of these

---

[2] A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. The personality of a juridical person is distinct from that of its members.  La. Civ. Code Ann. art. 24.

[3] These juridical persons were related in that they had common owners.

3

entities granted various, separate security

interests[4] in their non-titled movables, such as

---

[4] A security interest is "an interest in personal property or fixtures created by contract which secures payment or performance of an obligation." See LA. REV. STAT. ANN. § 10:1-201(35). It has also been defined as "an interest in movables or 'fixtures' that secures payment or performance of an obligation." See Editor's Note, preceding La. Civ. Code Ann. art. 471. Black's Law Dictionary defines it as "[a] property interest created by agreement or by operation of law to secure performance of an obligation (esp. repayment of a debt)." BLACK'S LAW DICTIONARY 1361 (7th ed. 1999). Security interests in Louisiana are granted in movable property and governed by LA. REV. STAT. ANN. § 10:9-101 et seq.

To make a security interest effective between the parties, it must be attached. See LA. REV. STAT. ANN. § 10:9-203. To be attached under this statute, the security interest must be enforceable against the debtor with respect to the collateral; the security interest becomes enforceable when all three of the following requirements are met: (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) one of the following conditions is met: (A) the debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers a life insurance policy, the condition specified in R.S. 10:9-107.1(b) is met, and if the security interest covers timber to be cut, a description of the land concerned; (B)the collateral is not a certificated security and is in the possession of the secured party under R.S. 10:9-313 pursuant to the debtor's security agreement; (C) the collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under R.S. 10:8-301 pursuant to the debtor's security agreement; or (D) the collateral is deposit accounts, electronic chattel paper, investment property, letter-of-credit rights, or a life insurance policy, and the secured party has control under R.S. 10:9-104, 9-105, 9-106, 9-107, or 1-107.1 pursuant to the debtor's security agreement. Id.

To make a security interest effective as against third-parties, it must be validly attached and thereafter perfected. See LA. REV. STAT. ANN. § 10:9-308-16. Depending upon the type of collateral secured, perfection may be achieved in a variety of ways. For corporeals, like those at issue in the instant case, perfection may be achieved via possession or by filing a

4

logging equipment, to their various creditors.

General Electric held the highest-ranking[5] security interest in the non-titled movables owned by Alba and Pearl. Although the first-ranking priority as to the non-titled movables owned by Ark-La-Tex changed several times, at the time of its bankruptcy on May 7, 2001, Peoples State was the highest-ranking secured creditor with respect to its non-titled movables.

During the bankruptcy proceedings, on August 10, 2001, the bankruptcy judge issued an order effectuating Ark-La-Tex's purchase of all of the membership interests in Pearl and Alba for the

financing statement. See LA. REV. STAT. ANN. § 10:9-313; LA. REV. STAT. ANN. § 10:9-310.
   In the instant case, no one has contended that any of the security interests is not valid.

[5] A creditor who holds the highest-ranking security interest, also known as the senior security interest, in collateral is said to have "priority" in that collateral. "Priority" is defined as "[t]he status of being earlier in time or higher in degree or rank; precedence. An established right to such precedence; esp[ecially], a creditor's right to have a claim paid before other creditors of the same debtor receive payment." BLACK'S LAW DICTIONARY 1212 (7th ed. 1999).

consideration of the nominal amount of $10.00 ("the August 10, 2001 Order"). The parties formed the erroneous impression that this order effected a substantive consolidation[6] of the three juridical persons. The order did not and could not merge the assets of Pearl and Alba into the bankruptcy estate of Ark-La-Tex, however, because neither juridical person had been placed into bankruptcy.[7] On October 20, 2001, the Bankruptcy Judge issued an order directing the movables (and other collateral) of Ark-La-Tex only to be sold at an auction. However, at the auction, held on

_____

[6] A substantive consolidation is "one mechanism for administering the bankruptcy estates of multiple, related entities." In Re Babcock and Wilcox Co., 250 F.3d 955, 958 (5th Cir. 2001). BLACK'S LAW DICTIONARY defines it as "the merger of two or more bankruptcy cases, usu[ally] pending against the same debtor or related debtors, into one estate for purposes of distributing the assets, usu[ally] resulting in the two estates sharing assets and liabilities, and in the extinguishment of duplicate claims and claims between the debtors." BLACK'S LAW DICTIONARY 304 (7th ed. 1999).

[7] Under these facts, a substantive consolidation would have been impossible to effect, because Alba and Pearl were not in bankruptcy.

November 30, 2001, because the parties thought that the bankruptcy estate had been expanded to include the assets of Pearl and Alba, their movables were auctioned off together with those owned by Ark-La-Tex. Thus, all of the non-titled movables of the Ark-La-Tex, Alba, and Pearl were sold at auction for a total of $433,908.62. Peoples State ranked first among Ark-La-Tex's secured creditors with a claim exceeding that amount against its non-titled movables. Consequently, this entire amount was disbursed to Peoples State, although, in truth, only $111,700 of the auction proceeds were attributable to Ark-La-Tex's non-titled movables; the remaining $322,208.62 was attributable to non-titled movables owned by Alba and Pearl.

Following a December 2002 ruling of the bankruptcy court that $322,208.62 of the auction

proceeds was attributable to the non-titled movables of Alba and Pearl, General Electric realized its error and demanded that Peoples State return this amount, but Peoples State refused. General Electric then sued Peoples State in March 2003 in a Louisiana state court, and Peoples State removed the case to the United States District Court for the Western District of Louisiana.[8] The district court transferred the case to the United States Bankruptcy Court for the Western District of Louisiana.

The bankruptcy court, relying on Louisiana Civil Code article 2299, which provides that "[a]

---

[8] The United States district court had jurisdiction under 28 U.S.C. § 1334(b) which provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." See 28 U.S.C. § 1334(b). Peoples State was entitled to remove this case under 28 U.S.C. § 1452(a) which allows a party to remove such a claim to the district court for the district where the civil action is pending, provided that the district court has jurisdiction of the claim or cause of action under Section 1334. See 28 U.S.C. § 1452(a). General Electric does not object to removal on this basis.

person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it," granted partial summary judgment in favor of General Electric in the amount of $322,208.62. The court reasoned that since this amount was attributable to non-titled movables owned by Alba and Pearl, General Electric, as their highest-ranking creditor holding security interests in their non-titled movables, was entitled to the proceeds of their sale. However, the Bankruptcy Court reserved to Peoples State the opportunity to show, at a trial on the merits, that: (1) some or all of the $322,208.62 in question was attributable to non-titled movables that belonged to Ark-La-Tex; or that (2) Peoples State relied to its detriment upon the representations that General Electric had made in the bankruptcy proceedings. If successful

9

on either showing, Peoples State would receive a setoff in the appropriate amount. After a full trial, however, the Bankruptcy Judge issued judgment in General Electric's favor, concluding that: (1) Peoples State had failed to show that Ark-La-Tex owned movables producing no more than $111,700 of the proceeds from the auction; and (2) Peoples State had failed to prove detrimental reliance upon any representations by General Electric. Peoples State appealed to the district court, which affirmed for the reasons given by the Bankruptcy Court in its rulings.

Peoples State argues before this court that: (1) General Electric has not presented a prima facie case of payment of a thing not due; (2) General Electric's damages were self-inflicted; (3) General Electric's claim is precluded by res judicata and as a forfeited compulsory

counterclaim; (4) General Electric is barred from its claim because of judicial estoppel; (5) the bankruptcy court erred in finding that Peoples State did not detrimentally rely upon representations made by General Electric; and (6) the bankruptcy court erred in refusing to admit evidence or allow proof of a single business enterprise. We affirm the judgment of the district court, and like the district court, do so essentially for the reasons assigned by the bankruptcy court.

## Discussion

In our review of the issues presented for appeal, we analyze the following asserted errors of the lower courts: (1) the grant of summary judgment in favor of General Electric on its claim of payment of a thing not due; (2) the judgment rendered, after full trial, that Peoples State had

failed to prove ownership of more than $111,700 worth of the non-titled movables sold at the auction and had failed to show the requisite elements of detrimental reliance; and (3) the evidentiary decision to exclude Peoples State's proffered evidence that the three juridical persons comprised a single business enterprise.

## I. Claims Addressed by Summary Judgment

We turn first to the claims upon which the partial summary judgment was granted in favor of General Electric.

### Standard of Review

This court reviews the grant of summary judgment <u>de</u> <u>novo</u>, applying the same standard as the lower court. <u>Gowesky v. Singing River Hosp. Sys.</u>, 321 F.3d 503, 507 (5th Cir. 2003). Summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). A fact is material only when it might affect the outcome of the suit under the governing law, and a fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence should be viewed in the light most favorable to the non-movant. Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 276 (5th Cir. 1992). If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific

13

facts showing the existence of a genuine issue for trial.  <u>Allen v. Rapides Parish Sch. Bd.</u>, 204 F.3d 619, 621 (5th Cir. 2000).

## A. Payment of a Thing Not Due[9]

We agree with the District and Bankruptcy courts that General Electric is entitled to be restored to funds disbursed to Peoples State as the payment of a thing not due.  Accordingly, we reject Peoples State's arguments, each of which asserts that General Electric failed to present a prima facie case of payment of a thing not due.

---

[9] Both parties agree that Louisiana law applies to this issue.  We find no error in the Bankruptcy Court's use of Louisiana law.  <u>See</u> <u>Butner v. United States</u>, 99 S.Ct. 914 (1979), wherein the Court explained, "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.  Property interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.  Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'  The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests."  <u>Id.</u> at 917-18.

Louisiana Civil Code article 2299 provides: "A person who has received a payment of a thing not owed him is bound to restore it to the person from whom he received it." La. Civ. Code Ann. art. 2299. Admittedly, Peoples State was the highest-ranking creditor holding security interests in the movables of Ark-La-Tex and was entitled to the $111,700 proceeds derived from their auction sale. However, $322,208.62 of the auction proceeds were derived from the sale of non-titled movables belonging to Alba and Pearl. That amount was due to General Electric, as the highest-ranking creditor holding security interest in those movables. In essence, Peoples State, by receiving the entirety of the auction proceeds, received a windfall of $322,208.62, which constituted a payment of a thing not owed it. Therefore, Peoples State must restore that amount to General

15

Electric, the juridical person from whom it received the money.

## B. Self-Inflicted Damages[10]

We do not accept Peoples State's argument that General Electric's payment of a thing not due claim should be precluded because of General Electric's own negligence. Numerous Louisiana cases hold that a mistaken payor's negligence will not bar his claim. <u>See</u>, <u>e.g.</u>, <u>Gootee Constr. v. Amwest Sur. Ins. Co.</u>, 03-0144 (La.1993), 856 So.2d 1203; <u>DeVillier v. Highlands Ins. Co.</u>, 389 So. 2d 1133 (La.App. 3d Cir. 1980); <u>Pioneer Bank & Trust Co. v. Dean's Copy Prods., Inc.</u>, 441 So. 2d 1234 (La.App. 2d Cir. 1983); <u>Jackson v. State Teacher's Ret. Sys.</u>, 407 So. 2d 416 (La.App. 1st Cir. 1981). Additionally, this court, applying Louisiana law, has ruled that "the right to reimbursement

---

[10] Here, too, we apply Louisiana law, for the same reasons asserted in the footnote above.

conferred by article 2299 exists regardless of whether such payment was made knowingly or through error." See Am. Int'l. Speciality Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 273 (5th Cir. 2003).

## C. Preclusion

Peoples State argues that General Electric's claim for payment of a thing not due is precluded under either res judicata principles or as a forfeited compulsory counterclaim. The thrust of its argument is that never, during any of the bankruptcy proceedings,[11] did General Electric assert its rights, as the highest ranking creditor of Alba and Pearl, to the $322,208.62 yielded by the auction sale of these entities' non-titled movables. We agree with the District and

---

[11] General Electric was involved in numerous proceedings in the Debtor's bankruptcy. For example, it participated in a Ranking Adversary Proceeding, a Marshaling Proceeding, and others.

17

Bankruptcy courts that General Electric's claim

for payment of a thing not due is not precluded

under either doctrine.

*1. Res Judicata*[12]

Preclusion of a claim under res judicata

principles requires four elements:

> (1) the parties must be identical in the
> two actions;
> (2) the prior judgment must have been
> rendered by a court of competent
> jurisdiction;
> (3) there must be a final judgment on the
> merits; and
> (4) the same claim or cause of action must
> be involved in both cases.

Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d

559 (5th Cir. 2004). In essence, res judicata

bars the subsequent litigation of claims that have

been litigated or should have been raised in an

earlier suit. Id. In the case at bar, the fourth

---

[12] In the absence of a federal governing statute or rule, the res judicata effect of a federal judgment, such as those asserted here, is determined by federal common law. See Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001).

18

requirement, <u>i.e.</u>, that the same claim or cause of action must be involved in both cases, is not met.

This Court has adopted the Restatement (Second) of Judgment's transactional test with respect to this inquiry and requires that the two actions be based on the same "nucleus of operative facts." <u>Eubanks v. F.D.I.C.</u>, 977 F.2d 166, 171 (5th Cir. 1992). As we have explained, "[T]he application of res judicata has been limited to issues of fact or law necessary to the decision in the prior judgment." <u>Rhoades v. Penfold</u>, 694 F.2d 1043, 1048 (5th Cir. 1983). Making a determination of whether the same nucleus of operative facts is present requires that the court analyze "the factual predicate of the claims asserted." <u>Eubanks</u>, 977 F.2d at 171.

Peoples State argues that General Electric should have asserted its claim of a security

19

interest in  the Alba and Pearl movables at any of the bankruptcy proceedings, namely the ranking adversary proceeding, in opposition to the Order of Abandonment, Auction and Accounting, or the Marshaling Adversary Proceeding.

However, General Electric's claim of payment of a thing not due came into existence only after proceeds of the auction, at which the property of Alba and Pearl was sold, were delivered in full to Peoples State.  So, at the time of the ranking adversary proceeding[13] and the Bankruptcy Court's Order of Abandonment, Auction and Accounting,[14] the distribution of the November 2001 auction proceeds that gave rise to General Electric's claim had not yet occurred. Thus, General Electric did not have a payment of a thing not due claim against Peoples

---

[13]  The ranking adversary proceeding was held in August 2001.

[14]  The Order of Abandonment, Auction and Accounting was issued in October 2001.

State to assert at the time of those proceedings. See <u>Blair v. City of Greenville</u>, 649 F.2d 365, 368 (5th Cir. 1981)(res judicata does not preclude an action based upon events occurring after the final judgment that is touted as the bar to the claim).

Furthermore, though the marshaling adversary proceeding post-dated the auction and the distribution of the proceeds thereof,[15] the same claim or cause of action as the one presented in the case at bar was not involved. In January 2002, before the parties discovered in December 2002 that some of the auctioned movables belonged to Pearl and Alba (as opposed to Ark-La-Tex), General Electric brought what it characterized as a petition to marshal assets.[16] In this petition,

---

[15] The marshaling adversary proceeding was instituted in January 2002, whereas the auction occurred in November 2001.

[16] Marshaling of assets is an equitable doctrine designed to promote fair dealing and justice. <u>Meyer v. U.S.</u>, 375 U.S. 233, 237 (1963). It "rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to

21

it asked the bankruptcy court to require Peoples State to share with General Electric the proceeds from the sale of a piece of Ark-La-Tex's immovable property, upon which Peoples State held a mortgage. Because General Electric held no security interest in the immovable, however, it was not entitled to petition, as a junior secured creditor, for the proceeds of that particular asset. As the Trustee correctly pointed out when defending against General Electric's marshaling claim, since General Electric had no contractual security interest in the immovable, its petition to have Peoples State share the proceeds of its sale with General Electric was actually an ill-

only one of the funds." Id. at 236 (quoting Sowell v. Federal Reserve Bank, 268 U.S. 449, 456-57 (1925)). In other words, "[i]ts purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security." Id. at 237. A junior lienholder may only invoke this doctrine if it will not operate as a detriment upon other creditors. John W. Stone Oil Distributor, Inc. v. M/V Mr. W. Bruce, 752 F.2d 184, 187 (5th Cir. 1985).

conceived request for relief under the doctrine of constructive trust for which it had no grounds. Therefore, when the bankruptcy court rejected General Electric's so-called marshaling of assets claim, its judgment did not operate as a res judicata bar to General Electric's suit to be restored to the auction proceeds of Alba and Pearl's movables that were paid in error to Peoples State. The ill-fated marshaling or constructive trust action was based upon an entirely different, and misconceived, transaction, set of facts, or claim from those presented in General Electric's current, legitimate claim of payment of a thing not due in which it seeks to recover the auction proceeds that had been paid to Peoples State because of the parties' mutual error. Accordingly, we see no error in the bankruptcy and district courts' judgments

enforcing General Electric's claim under Louisiana

Civil Code article 2299 against Peoples State to

be restored to the amount not owed that was paid

to Peoples State.

*2. Compulsory Counterclaim*[17]

Nor is General Electric's claim barred as a

compulsory counterclaim. Rule 13 of the Federal

Rules of Civil Procedure provides:

> (a) Compulsory Counterclaims. A pleading
> shall state as a counterclaim any claim
> which at the time of serving the pleading
> the pleader has against any opposing
> party, if it arises out of the transaction
> or occurrence that is the subject matter
> of the opposing party's claim and does not
> require for its adjudication the presence
> of third parties of whom the court cannot
> acquire jurisdiction. . . .

FED. R. CIV. P. 13(a). For the same reasons that

General Electric's claim of payment of a thing not

---

[17] Federal law applies to determine this claim. See Hanna v. Plumer, 380 U.S. 460 (1965). "The broad command of Erie [is] identical to that of the Enabling Act: federal courts are to apply state substantive law and federal procedural law." Id. at 466.

24

due is not precluded under the principles of res judicata, neither is it barred as a forfeited compulsory counterclaim.

## D. Judicial Estoppel[18]

Peoples State's next argument, that judicial estoppel prevents General Electric's recovery, is also unavailing. We agree with the courts below that General Electric's claim is not barred by judicial estoppel.

The doctrine of judicial estoppel prohibits parties from deliberately changing positions according to the exigencies of the moment; it is designed to protect the integrity of the judicial process. New Hampshire v. Maine, 532 U.S. 742,

---

[18] "[G]enerally, this Circuit considers judicial estoppel 'a matter of federal procedure' and therefore applies federal law. . . . [T]he application of federal law concerning judicial estoppel is appropriate in this case because both suits filed by [the plaintiff] ended up in federal court and it is the federal court that is subject to manipulation and in need of protection." Hall v. GE Plastic Pacific PTE Ltd., 327 F.3d 391, 395-96 (5th Cir. 2003).

750 (2001) (citing Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982)); United States v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1993). Judicial estoppel is an equitable doctrine invoked by the court within its sound discretion. Id. (citing Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)).

Courts employ several factors in determining whether to apply the doctrine: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001).

Peoples State argues that two courses of conduct by General Electric support our invoking judicial estoppel here.  First, because General Electric, in an earlier adverse bankruptcy proceeding between it and another creditor of Ark-La-Tex,[19] contended that all of the non-titled movables sold at the auction belonged to Ark-La-Tex, Peoples State points out that General Electric's current position, i.e., that $322,208.62 of the non-titled movables sold at the

---

[19] Ark-La-Tex had instituted a Ranking Adversary Proceeding to determine the priority of its various creditors, including Peoples State and General Electric.  The court ultimately held Peoples State to be the highest-ranking creditor of the Debtor.  Initially, a non-party to this suit, Citizens National, had held this position but relinquished it to General Electric by entering a subordination agreement with that entity.  Subsequently, when transferring its security interest to Peoples State, Citizens National negligently failed to divulge the existence of the subordination agreement.  Therefore, General Electric lost its first-ranking position and brought Citizens National into the Ranking Adversary Proceeding through a third-party demand.  General Electric argued that Citizens National was liable to it for the full amount of the auction proceeds that were delivered to Peoples State.  General Electric's position was that all the non-titled movables sold at the auction belonged to Ark-La-Tex and that but for Citizens National's negligence, it would have held the first-ranking security interest in that property and would have been able to recover the full proceeds.

auction belonged to Alba and Pearl, is "clearly inconsistent with its earlier position." However, the other two factors required for the invocation of judicial estoppel are not fulfilled. General Electric was not successful in persuading the Bankruptcy Court to accept its earlier position that all of the non-titled movables belonged to Ark-La-Tex. The Bankruptcy Court ruled that $322,208.62 of the non-titled movables sold at the auction belonged to Alba and Pearl.[20] Further, allowing General Electric to assert its current position will not result in an unfair advantage for General Electric or an unfair detriment for Peoples State. It will only place the parties in the position they should have occupied immediately following the auction.

---

[20] This is the only occasion on which ownership of the Alba and Pearl non-titled movables was either at issue or adjudicated in the prior Ark-La-Tex bankruptcy proceedings.

28

Second, Peoples State argues that General Electric never asserted, in any of the bankruptcy proceedings, that the non-titled movables belonged to the Alba and Pearl and proceeded on the unspoken assumption that all of the non-titled movables were owned by the Debtor. As such, Peoples State argues that General Electric's claim is barred by judicial estoppel. Though this is an accurate characterization of General Electric's behavior, this is not grounds for judicial estoppel, because this is not a "position taken" or an "argument made" by General Electric that would trigger judicial estoppel. Furthermore, "it may be appropriate to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake.'" New Hampshire v. Maine, 532 U.S. 742 (quoting John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26,

29 (4th Cir. 1995)(explaining that the vice that judicial estoppel is designed to prevent is the "cold manipulation" of the courts to the detriment of the public)); <u>Jethroe v. Omnova Solutions, Inc.</u>, 412 F.3d 598 (5th Cir. 2005).

**II. Claims Addressed at Full Trial**

Next we turn to the Peoples State's claim of detrimental reliance, which was litigated at a trial on the merits.

<u>Standard of Review</u>

The existence of a promise, and the reasonableness <u>vel</u> <u>non</u> of reliance on a promise if there was one, are essentially questions of fact<u>.</u> <u>Carter v. Huber & Heard, Inc.</u>, 95-142 (La. App. 3d Cir. 5/31/95), 657 So.2d 409, 412. Therefore, the standard of review is clear error. <u>Elementis Chromium L.P. v. Coastal States Petroleum Co.</u>, 450 F.3d 607, 613 (5th Cir. 2006).

Analysis

Peoples State argues that the lower court erred in ruling that Peoples State did not rely to its detriment on representations made by General Electric in the various bankruptcy proceedings.

The theory of detrimental reliance is codified in Louisiana Civil Code article 1967, which, in pertinent part, provides: "A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La. Civ. Code Ann. art. 1967.

It is difficult to recover under the theory of detrimental reliance, because such a claim is not favored in Louisiana. <u>May v. Harris Management Corp.</u>, 04-2657 (La. App. 1st Cir. 12/22/05), 928 So.2d 140, 145; <u>Wilkinson v. Wilkinson</u>, 323 So.2d

120, 126 (La. 1975); <u>Barnett v. Bd. of Tr. for State Coll. & Univs.</u>, 00-1041 (La. App. 1st Cir. 6/22/01), 809 So. 2d 184, 189. Detrimental reliance claims must be examined carefully and strictly. <u>May</u>, 928 So.2d at 145 (citing <u>Kibbe v. Lege</u>, 604 So.2d 1366, 1370 (La. App.3d Cir. 1992)). The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. <u>Id.</u> (citing <u>Suire v. Lafayette City-Parish Consol. Government</u>, 04-1459 (La. 4/12/05), 907 So.2d 3, 58-59).

To establish detrimental reliance, a party must prove the following by a preponderance of the evidence: (1) a representation by conduct or word; (2) made in such a manner that the promisor should have expected the promisee to rely upon it; (3)

justifiable reliance by the promisee; and (4) a change in position to the promisee's detriment because of the reliance. <u>Suire</u>, 907 So.2d at 59.

Peoples State cannot establish a cognizable detrimental reliance claim here. First of all, General Electric made no representation to Peoples State. Instead, it, in error, tacitly accepted that Ark-La-Tex owned the disputed property. Typically, successful detrimental reliance claims are based upon promises made to the claimant by the other party.[21] Additionally, General Electric's acceptance was, if anything, a legal position, not the typical factual misrepresentation found in detrimental reliance cases.[22]

---

[21] <u>See</u> <u>Oliver v. Central Bank</u>, 26,932 (La. App.2d Cir. 5/10/95), 658 So.2d 1316, 1323 ("Plaintiffs produced no evidence to illustrate a promise made by Central Bank in their favor.").

[22] <u>See</u>, <u>e.g.</u>, <u>Morris v. Friedman</u>, 94-2808 (La. 11/27/95), 663 So.2d 19, <u>Miller v. Miller</u>, 35,934 (La. App.2d Cir. 5/8/02), 817 So. 2d 1166; <u>White v. Entergy Gulf States, Inc.</u>, 03-2074 (La.

Even assuming arguendo that General Electric's conduct constituted a representation, General Electric had no expectation that its mistaken acquiescence, evidenced solely by its legal position, would be relied upon by Peoples State. And even if it did, Peoples State was not reasonable in so relying on that tacit acceptance as conveying such a representation. In determining justifiable reliance, courts generally look to the reasonableness of that reliance. Under Louisiana law, reasonableness is determined by examining factual circumstances, one of which is the commercial sophistication of the party asserting the claim. <u>Walter Craft Mgmt., L.L.C. v. Mercury Marine</u>, 361 F. Supp. 2d 518 (M.D. La. 2004); <u>Academy Mortgage Co. v. Barker, Boudreaux, Lamy & Foley</u>, 96-0053 (La. App. 4th Cir. 4/24/96),

<hr>

App.4th Cir. 6/16/04), 878 So.2d 786; <u>Barnett v. Board of Trustees for State Colleges and Universities</u>, 809 So.2d 184.

673 So. 2d 1209. Peoples State, as a knowledgeable banking institution, is presumed to be commercially sophisticated, and its reliance upon a legal position, taken by General Electric in earlier proceedings as constituting a representation to it that Ark-La-Tex owned the movables, is not reasonable.

**III. Evidentiary Ruling**

Finally, we turn to Peoples State's argument that the Bankruptcy Court erred in not allowing it to introduce evidence that Pearl and/or Alba were shell corporations of Ark-La-Tex, <u>i.e.</u>, that the three juridical persons constituted a single business enterprise. According to the Bankruptcy Court, such evidence was irrelevant to the issues in the case at bar.

We find that the Bankruptcy Court did not abuse its discretion in making this ruling. Even

had this evidence been marginally relevant, the Bankruptcy Court reasonably could have excluded it under Rule 403 of the Federal Rules of Evidence. That rule provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403. In the instant case, the probative value of this evidence is substantially outweighed by the danger of confusion of the issues, and by considerations of undue delay and waste of time.

Under Louisiana law, a juridical person's personality is distinct from that of its members. See La. Civ. Code Ann. art. 24. Also, the business affairs of a juridical person are its own, thereby precluding the imposition of

liability upon another natural or juridical person for the obligations of a juridical person. See LA. REV. STAT. ANN. § 12:93(B). In some situations, however, the corporate entity may be disregarded to impose liability upon: (1) a shareholder of the juridical person, i.e., "piercing the corporate veil;" or (2) an affiliate of the juridical person, i.e., "single business enterprise." See 8 Glenn G. Morris and Wendell H. Holmes, Louisiana Civil Law Treatise: Business Organizations § 32.01 (1999).

Typically, the veil piercing theory is implemented to disregard the concept of corporate separateness when a juridical person is used to "defeat public convenience, justify wrong, protect fraud, or defend crime." Smith v. Cotton's Fleet Serv., Inc., 500 So.2d 759, 762 (La. 1987); see also 1 Fletcher Cyc. Corp. § 41. Likewise, when

37

a group of affiliated corporations constitutes a single business enterprise, a court may "disregard the concept of corporate separateness and extend liability to each of the affiliated corporations" for the purpose of preventing fraud or achieving equity.  Brown v. Auto. Cas. Ins. Co., 93-2169 (La. App. 1st Cir. 10/7/94), 644 So. 2d 723, 727; Lee v. Clinical Research Ctr., 04-0428 (La. App. 4th Cir. 11/17/04), 889 So.2d 317, 323; see also 1 Fletcher Cyc. Corp. § 41.30.  These justifications for disregarding a corporate entity are not alleged or relied upon in the instant case.  Nowhere is there any allegation or indication of any public inconvenience, wrong, fraud, crime, or anything else of that nature; neither is there a need to use these corporate piercing doctrines to achieve equity.

This case is simply one in which three

separate juridical persons (Ark-La-Tex, Alba, and Pearl) entered into valid, legal security agreements with two different creditors (namely Peoples State and General Electric). There is no allegation or showing that either secured creditor was damaged, disadvantaged, or delayed in the enforcement of its rights against the affected assets of the juridical entities by their inter-corporate or juridical person practices or business arrangements. Peoples State simply seeks to utilize the single business enterprise theory to create for itself an additional security interest, for which it did not contract, in non-titled movables of Pearl and Alba, in an effort to prime the valid, first-ranking security interest held by General Electric. Absent any allegation of wrongdoing, we decline to implement such an extraordinary disregard of the separate legal

39

personalities of corporate and juridical entities in this case.

## Conclusion

For these reasons, we affirm the judgment of the district court.

AFFIRMED.