# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 26, 2011

Lyle W. Cayce
Clerk

No. 09-50990

SAVE OUR SPRINGS (S.O.S.) ALLIANCE, INC.,
Doing Business as Save Our Springs Alliance, Inc.,
Doing Business as S.O.S. Alliance,

Debtor,

SAVE OUR SPRINGS (S.O.S.) ALLIANCE, INC.,
Doing Business as Save Our Springs Alliance, Inc.,
Doing Business as S.O.S. Alliance,

Appellant,

versus

WSI (II)-COS, L.L.C.,

Appellee.

Appeal from the United States District Court
for the Western District of Texas

No. 09-50990

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Save our Springs (S.O.S.) Alliance, Inc. ("S.O.S."), contests the bankruptcy court's refusal to confirm its reorganization plan. If confirmation is denied, it argues in the alternative that it should not be held to the 300-day deadline for plan confirmation under 11 U.S.C. § 1121(e)(2) because its designation of itself as a small business debtor in its bankruptcy petition was incorrect. We affirm the district court's affirmance of the orders of the bankruptcy court, concluding that the bankruptcy court correctly denied plan confirmation and that S.O.S. is judicially estopped from denying that it is a small business debtor after enjoying the benefits of that status throughout the bankruptcy proceedings.

I.

S.O.S. is a nonprofit charitable organization that sues municipalities and developers to ensure what it believes is responsible use of the Edwards Aquifer in the Texas Hill Country. Two of its lawsuits resulted in sizable awards of attorney's fees to the defendants in those suits. One of the defendants, the Lazy Nine Municipal Utility District, assigned its award to Sweetwater Austin Properties, L.L.C. ("Sweetwater").[1] Unable to pay the awards, S.O.S. filed for bankruptcy in April 2007.

Five months later, S.O.S. filed its reorganization plan, which proposed to supply a $60,000 Creditor Fund with charitable contributions from S.O.S.'s donors within sixty days of plan confirmation. The fund would then be distributed pro rata to S.O.S.'s unsecured creditors, and all remaining unsecured debts would be discharged.

---

[1] While this appeal was pending, Sweetwater transferred its interest in the award to WSI (II)-COS, L.L.C. Because Sweetwater was the interested party at all relevant times, this opinion refers to "Sweetwater" throughout.

No. 09-50990

At the five-day confirmation hearing, S.O.S. presented evidence of its strong fundraising history, indicated that it had pledges for $20,000 of the fund after soliciting its top donors, and expressed confidence that it could raise the rest within the sixty-day period. S.O.S.'s executive director testified, however, that it would be difficult to raise the rest of the funds, because many of S.O.S.'s donors wanted to prevent their money from going to judgment creditors in bankruptcy. Moreover, the executive director noted that it would be "extremely difficult" to take money from S.O.S.'s general operating fund, because "[w]e struggle to meet our monthly overhead every month," and S.O.S. had told its general-fund donors that their money would not go to pay judgment creditors.

Although the plan treated all unsecured creditors alike, it separated them into three classes. Class 4 contained Sweetwater's claim, class 5 the claim of the other attorney's fee award recipient, and class 6 the claims of all remaining unsecured creditors, including friendly suppliers and an S.O.S. board member. S.O.S. stated that it placed Sweetwater in a separate class because of the ongoing hostility between S.O.S. and Sweetwater about development projects in the Hill Country and because S.O.S. might bring further litigation against Sweetwater to contest the attorney's fee award.

Six months after the hearing, the bankruptcy court issued an opinion refusing to confirm the reorganization plan. It explained that the plan was not feasible, because S.O.S. had not demonstrated a sufficiently firm commitment from its donors to contribute the $60,000. *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 388 B.R. 202, 239-44 (Bankr. W.D. Tex. 2008). Moreover, it held that the plan improperly classified Sweetwater separately from the other unsecured creditors in an attempt to gerrymander the class voting. *Id.* at 233-38.

S.O.S.'s bankruptcy petition designated S.O.S. a "small business debtor" under 11 U.S.C. § 101(51D), so it could file a reorganization plan only within 300 days of the petition date. *See* 11 U.S.C. § 1121(e)(2); 11 U.S.C. § 301(b). By the

3

No. 09-50990

time the bankruptcy court had issued its opinion, that period had elapsed, so Sweetwater filed a motion to dismiss the petition. In response, S.O.S. moved to amend its filing to specify that it was not a "small business debtor."

The bankruptcy court denied S.O.S.'s motion and dismissed the petition on the ground that S.O.S. was judicially estopped from changing its small-business designation. *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 393 B.R. 452 (Bankr. W.D. Tex. 2008). The district court affirmed. *In re Save Our Springs (S.O.S.) Alliance, Inc.*, No. A-08-CA-727-LY (W.D. Tex. Sept. 29, 2009).

II.

A.

To obtain confirmation of its reorganization plan, a debtor must show by a preponderance of the evidence that its plan is feasible, which means that it is "not likely to be followed by . . . liquidation, or the need for further financial reorganization." 11 U.S.C. § 1129(a)(11). We typically review a bankruptcy court's conclusions about plan feasibility for clear error.[2] S.O.S. argues that clear error review is not appropriate, however, because the district court applied the wrong law.[3] Specifically, it contends that the bankruptcy court required certainty of success when "[o]nly a reasonable assurance of commercial viability is required." *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enter., Ltd., II)*, 994 F.2d 1160, 1166 (5th Cir. 1993) (citation omitted).

As S.O.S. acknowledges, the bankruptcy court correctly stated that cer-

---

[2] *See Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 801 (5th Cir. 1997); *Pizza, Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1377 (9th Cir. 1985) ("The issue whether a plan is feasible . . . is one of fact, which we review under the clearly erroneous standard." (citation omitted)).

[3] *See Wilson v. Huffman (In re Missionary Baptist Found. of Am., Inc.)*, 712 F.2d 206, 209 (5th Cir. 1983) ("When a finding of fact is premised on an improper legal standard, or a proper one improperly applied, that finding loses the insulation of the clearly erroneous rule." (citation omitted)).

No. 09-50990

tainty is not required. *S.O.S.*, 388 B.R. at 240. In support of its argument, S.O.S. nevertheless points to the court's statement that S.O.S. "offered no evidence at the hearing to show that it could [raise the $60,000]––no commitments, no evidence of relevant past performance, nothing." *Id.* S.O.S. contends that it did present evidence showing a reasonable assurance of success, so the statement that there was "no evidence" makes sense only if the court was improperly looking for certainty.

S.O.S.'s argument fails, because there was no evidence showing even a reasonable assurance of success. S.O.S. points to its past financial statements showing successful fundraising campaigns. But raising funds during bankruptcy is more difficult than at other times. That is particularly true here, given that S.O.S.'s donors are hesitant to give for the purpose of paying off judgment creditors. The bankruptcy court's conclusion that past donations are not evidence of future fundraising ability is thus appropriate.[4]

S.O.S. also asserts that the $20,000 in pledges are evidence of a reasonable assurance of success. S.O.S.'s executive director explained, however, that those pledges were "voluntary donations" and "oral pledges," not "contracts . . . that commit [the donors] to give money in the future." S.O.S. presented no evidence that the donors would be or were capable of honoring the pledges, and absent any such evidence, these voluntary pledges alone are too speculative to provide evidence of feasibility.[5] The court thus applied the correct standard when concluding that there was "no evidence."

S.O.S. next contends that the bankruptcy court failed to recite the common

---

[4] *See* 7 COLLIER ON BANKRUPTCY ¶ 1129.02[11] (16th ed. rev. 2010) (stating that the court "has significant leeway on the types of evidence it may consider, including preferring results during the pendency of the case over prior results" (footnote omitted)).

[5] *See Canal Place Ltd. P'ship v. Aetna Life Ins. Co. (In re Canal Place Ltd. P'ship)*, 921 F.2d 569, 579 (5th Cir. 1991) ("Speculative, conjectural or unrealistic projections by Debtor cannot support Debtor's predictions of future performance." (citation omitted)).

six-factor test for feasibility.[6]  There is no requirement, however, that the court consider all six factors.[7]  That is particularly true where, as here, feasibility depends almost exclusively on the willingness of S.O.S.'s donors to give.  The bankruptcy court applied the correct law, so we review its conclusions for clear error.

Applying that standard, we conclude that there is ample evidence supporting the conclusion that S.O.S.'s plan was not feasible.  S.O.S. had $20,000 in pledges but no evidence of any firm commitments; it secured those pledges only after tapping all of its large donors who historically had given more than a few thousand dollars a year.  Even assuming that the $20,000 would arrive as pledged, there was no evidence that S.O.S. could raise an additional $40,000 in only sixty days when its largest donors had already been tapped.  S.O.S.'s executive director speculated that more donors would contribute after plan confirmation, but such speculation is insufficient.[8]

S.O.S. argues that it could have used its general operating money to fund the plan.  But S.O.S.'s managing director testified that none of its general income for 2007 was set aside for the Creditor Fund, because "we're getting that

---

[6] The list typically includes "(1) the adequacy of the debtor's capital structure; (2) the earning power of the debtor's business; (3) economic conditions; (4) the ability of the debtor's management; (5) the probability of the continuation of the same management; and (6) and [sic] any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan." *In re M & S Assocs., Ltd.*, 138 B.R. 845, 849 (Bankr. W.D. Tex. 1992) (citation omitted).

[7] *See Briscoe Enters.*, 994 F.2d at 1166 (failing to recite the test and considering only three factors).

[8] Many courts have found debtors' statements that funding is forthcoming to be insufficient in the absence of concrete evidence that the contributors are willing to give and capable of giving. *See, e.g.*, *In re Repurchase Corp.*, 332 B.R. 336, 343 (Bankr. N.D. Ill. 2005) (deciding that president's statement that his wife will provide capital is insufficient); *In re Ralph C. Tyler, P.E., P.S., Inc.*, 156 B.R. 995, 997 (Bankr. N.D. Ohio 1993) (ruling that debtor's statement that outside sources would provide funding is insufficient without other evidence of "firm" commitments); *In re Wiston XXIV, Ltd. P'ship.*, 153 B.R. 322, 327 (Bankr. D. Kan. 1993) (finding that partner's promise to contribute $100,000 in cash is not probative, because he testified that he did not have the money and did not know how he would get it).

No. 09-50990

money separately from our operating expenses." S.O.S.'s executive director also testified that it would be "extremely difficult" to take money from the general fund, because "[w]e struggle to meet our monthly overhead every month," and S.O.S. had told its general-fund donors that their money would not go to pay judgment creditors. In sum, the evidence did not provide reasonable assurance that S.O.S. could fund the plan.

## B.

The bankruptcy court can approve a reorganization plan only if it conforms to the requirements of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). Those requirements include that the plan must place each creditor's claim in a class and specify the treatment of each class. 11 U.S.C. § 1123(a)(1). At least one class that is impaired—that is, that will not receive the full value of its claims—must approve the plan.[9] A claim can be put into a class only if it "is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Thus, "ordinarily 'substantially similar claims,' those which share common priority and rights against the debtor's estate, should be placed in the same class." *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1278 (5th Cir. 1991). In particular, debtors cannot place claims into separate classes to gerrymander the vote—that is, to create an impaired class that will approve the plan. *Id.* at 1279.

S.O.S.'s plan treats all its unsecured creditors identically, so they should all have been in the same class absent a legitimate reason to classify them separately. The bankruptcy court found no such reason, instead holding that S.O.S. had gerrymandered the vote by putting Sweetwater's claim into a separate class, thus ensuring that S.O.S.'s friendly creditors in class 6 could constitute an im-

---

[9] For a class to approve a plan, at least one-half of the claims holding two-thirds of the total dollar amount must vote in favor. 11 U.S.C. § 1126(c).

No. 09-50990

paired class that would approve the plan.[10]

S.O.S. contends that the bankruptcy court erred, because Sweetwater has two[11] "non-creditor interests" justifying separate classification. A non-creditor interest can justify separate classification if it gives Sweetwater "a different stake in the future viability" of S.O.S. that may cause it to vote for reasons other than its economic interest in the claim. *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581, 587 (6th Cir. 1986). If such non-creditor interests in fact exist, they would justify S.O.S.'s classification scheme. Because the existence of the alleged non-creditor interests is a factual question, we review for clear error the bankruptcy court's conclusion that there were no non-creditor interests. *See Greystone*, 995 F.2d at 1281 n.7.

The first non-creditor interest is Sweetwater's alleged desire to cause S.O.S.'s dissolution to prevent S.O.S. from funding further litigation about its attorney's fee award.[12] The desire to avoid litigation can be a non-creditor interest, but usually only where the potential litigation is unrelated to the creditor's claim.[13] Moreover, there is no evidence that the desire to avoid litigation affected Sweetwater's vote on the plan. The litigation funding came directly from one of

---

[10] *S.O.S.*, 388 B.R. at 233-38. If all of the unsecured creditors' claims were classed together, Sweetwater's claim was so large that it would make up one-third of the dollar amount in the class, giving it a veto on the class vote.

[11] S.O.S.'s brief lists three such interests, but the third—Sweetwater's antagonism toward S.O.S.—is merely a more general statement of the second—conflicts between S.O.S. and Sweetwater about development in the Hill Country—so we will consider both together.

[12] Although the award had been litigated to a final judgment and all appeals had been exhausted, S.O.S. planned to raise a collateral challenge based on the argument that the state judge who heard the case should have been disqualified.

[13] *See In re Heritage Org., L.L.C.*, 375 B.R. 230, 300 (Bankr. N.D. Tex. 2007) (where debtor's litigation against creditor was unrelated to creditor's claim but instead sought damages for breach of contract). Where the litigation is related to the creditor's claim, considerations related to it are part of the creditor's interest as a creditor and thus are appropriate motivations for voting that do not justify separate classification.

S.O.S.'s donors, so the bankruptcy court correctly concluded that that funding would continue even if S.O.S.'s plan were not confirmed.[14]  Sweetwater's vote was not dependent on its interest in avoiding litigation.

Second, S.O.S. points to its ongoing conflict with Sweetwater about water development in the Hill Country.  In support, it notes that S.O.S. was opposing one of Sweetwater's applications for a water permit, that Bill Gunn, Sweetwater's managing partner, considered S.O.S.'s activity to be "harassment," and that the two parties were likely to clash again in the future.

There was also evidence, however, that the animosity did not motivate Sweetwater's voting.  For example, Gunn was not aware that S.O.S. opposed Sweetwater's permit, and he stated that putting S.O.S. out of business would not end opposition to Sweetwater's projects, which came from many sources.  Although there is conflicting evidence on this point, deference to the bankruptcy court is particularly important on the highly factual question of Sweetwater's motivation.  We thus conclude that S.O.S. has failed to present sufficient evidence to overturn the bankruptcy court's conclusion that animosity toward S.O.S. did not motivate Sweetwater's vote.

## C.

Usually, debtors can amend filings with the court "as a matter of course at any time before the case is closed."  FED. R. BANKR. P. 1009(a).  Judicial estoppel, however, is an equitable doctrine that can prevent an amendment where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice."  *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (citing *Superior Crewboats, Inc.*

---

[14] In fact, the litigation did continue past the dismissal of the bankruptcy, and Sweetwater's award was upheld.  *See Sweetwater Austin Props., L.L.C. v. SOS Alliance, Inc.*, 299 S.W.3d 879 (Tex. App.—Austin 2009, pet. denied).

*v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 334-35 (5th Cir. 2004)).  Courts consider three factors when deciding whether judicial estoppel applies: "(1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; [and] (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Peoples State Bank v. Gen. Elec. Capital Corp. (In re Ark-La-Tex Timber Co.)*, 482 F.3d 319, 332 (5th Cir. 2007) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).  The bankruptcy court's application of judicial estoppel should be reversed only if it was an abuse of discretion.  *See Kane*, 535 F.3d at 384.

Here, each of the factors supports the application of estoppel.  First, S.O.S.'s new assertion that it is not a small business debtor is clearly inconsistent with its original designation.  Second, the court accepted S.O.S.'s original position by treating S.O.S. as a small business debtor.  For example, the court allowed S.O.S. to file its plan without a disclosure statement under 11 U.S.C. § 1125(f), shortened the notice period for creditors because of the time constraints on small business debtors under 11 U.S.C. §§ 1121(e) and 1129(e), and expedited the hearings on confirmation and other issues.

Third, because S.O.S. has already enjoyed the benefits of those expedited hearings, it should not now be allowed to avoid the costs of the small-business designation at the expense of its creditors.  Sweetwater and the other creditors faced additional expense to meet the expedited deadlines.  Forcing them to continue to participate in prolonged bankruptcy proceedings at additional expense by changing S.O.S.'s designation would unfairly punish those creditors.

Additionally, S.O.S.'s filings with the bankruptcy court show that it was aware, as early as October 31, 2007, that the designation might be incorrect.  Nonetheless, it knowingly enjoyed the benefits of the designation for almost nine

months thereafter, only moving to amend on July 17, 2008, after the deadline had passed and the designation had led to adverse consequences. That timeline shows the opportunistic behavior that judicial estoppel is designed to prevent.

S.O.S. argues that if its small business designation was incorrect, then it was void under *Coleman Enterprises, Inc. v. QAI, Inc. (In re Coleman Enterprises, Inc.).*[15] *Coleman*, however, involved a creditor's attempt to prevent a debtor from gaining the benefits of small business status. It did not consider the need for judicial estoppel to prevent a debtor's attempt to change its designation to avoid the costs of its choice.

Finally, S.O.S. maintains that if it cannot amend its petition, it should be allowed to file a new reorganization plan on the theory that the new plan will "relate back" to the date of filing of the old plan.[16] Both of the cases it cites dealt with immaterial changes to plans that had not yet been adjudicated. Here, by contrast, the court has already adjudicated S.O.S.'s plan, and any amendments to make the plan acceptable must involve material changes. Thus, allowing amendments is not a matter of mere administrative inconvenience but would require the court to reconsider the entire matter. S.O.S.'s cited cases do not require that result.

For the reasons explained, the judgment of the district court, which affirmed the decisions of the bankruptcy court, is AFFIRMED.

---

[15] 275 B.R. 533, 535 (B.A.P. 8th Cir. 2002) ("Debtors, by definition, were not small businesses at the time they filed their Chapter 11 petitions. They, therefore, did not satisfy the condition precedent to making a small-business election, making the election void *ab initio*.")

[16] *See In re Fla. Coastal Airlines, Inc.*, 361 B.R. 286, 290 (Bankr. S.D. Fla. 2007) (holding that an amended plan filed after deadline relates back to original, because it is "fundamentally a cleaned-up version of" the original); *Bertram Commc'ns LLC v. Netwurx, Inc.*, 2009 WL 3809800, at *1 (E.D. Wis. 2009) (No. 09-CV-1037) (allowing amendments after deadline to "clarify [the debtor's] previous plan").