**FILED**
**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**May 16, 2018**

**Blaine F. Bates**
**Clerk**

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

IN RE NOVINDA CORP.,

Debtor.

_____

MINERALS TECHNOLOGIES, INC.,
COLLOID ENVIRONMENTAL
TECHNOLOGIES COMPANY, LLC, and
AMCOL INTERNATIONAL CORP.,

Appellants,

v.

NOVINDA CORP.,

Appellee.

BAP No. CO-17-004
BAP No. CO-17-005


Bankr. No. 16-13083
Chapter 11


OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

Aaron A. Boschee (Christopher Meyer of Squire Patton Boggs LLP, Cleveland, Ohio &
Daniel Slifkin of Cravath, Swaine & Moore LLP, New York, New York, with him on the
brief) of Squire Patton Boggs LLP, Denver, Colorado for Appellants.

Joshua M. Hantman, (Samuel M. Kidder with him on the brief) of Brownstein Hyatt
Farber Schreck, LLP, Denver, Colorado for Appellee.

Before **KARLIN**, Chief Judge, **NUGENT**, and **MOSIER**, Bankruptcy Judges.

_____

**MOSIER**, Bankruptcy Judge.

_____

Appellants Minerals Technologies, Inc., Colloid Environmental Technologies Company, LLC, and AMCOL International Corp. were unsuccessful in their efforts to prevent confirmation of Novinda Corp.'s Chapter 11 plan of liquidation. They have appealed two Bankruptcy Court orders on plan confirmation: (1) the Order Overruling Objections to Confirmation, Finally Approving Disclosure Statement, and Denying Motion to Convert (Order Overruling Objections); and (2) the Order Confirming Second Amended Plan of Reorganization (Confirmation Order).[1] The Appellants contend that the Bankruptcy Court committed reversible error when it confirmed the Chapter 11 plan, which separately classified their claims, and that the Bankruptcy Court also erred when it found that the Chapter 11 plan is feasible. We find that the Bankruptcy Court did not commit any reversible error when it confirmed Novinda Corp.'s Chapter 11 plan and we therefore affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Novinda Corp. (Debtor) was an advanced air quality technology company that developed and produced a product to remove mercury from coal ash waste generated by coal-fired power plants (Product).[2] The Debtor financed the development and production of the Product through venture capital funding, secured loans, and unsecured loans.[3] The

---

[1]     Although the plan was a liquidating plan, *see* Appellants' App. at 725, the Confirmation Order referred to it as one of reorganization.
[2]     Order Overruling Objections at 1, *in* Appellants' App. at 751. The Debtor's product allowed plant operators to comply with air quality requirements set by the EPA and Department of Energy.
[3]     *Id.*, *in* Appellants' App. at 751.

Appellants were creditors of, and 18% equity holders in, the Debtor.[4] The Appellants claim that by January 2015 they had invested a total of $7.2 million in the Debtor.[5] As a condition of additional funding from the Appellants, Colloid became the exclusive manufacturer of the Product.[6] The Debtor paid Colloid one hundred percent of the actual manufacturing costs plus an agreed upon profit.[7] Colloid manufactured the Product and then invoiced the Debtor for its costs. In some instances, Colloid converted its receivables into promissory notes due to the Debtor's inability to pay.[8]

The Debtor also received substantial equity from certain investment firms that help capitalize struggling businesses. These investment firms included Altira Technology Fund V, LP, NV Partners IV LP, and NV Partners IV-C, LP (Funds). As of the petition date, the Funds held $654,986 in secured claims and $800,342 in unsecured claims.

The Debtor's contract with Colloid required the Debtor to pay any increase in manufacturing costs after Colloid provided a thirty-day notice and supporting documentation. On February 2, 2016, Colloid gave the Debtor notice of an immediate fifty percent increase in manufacturing costs and demanded advance payment before manufacturing any more of the Product.[9]

---

[4]     *Id.* at 2, *in* Appellants' App. at 752.
[5]     *Verified Complaint* at 10, *in* Appellants' App. at 62.
[6]     *Tr. of Dec. 12, 2016 Hearing* at 69-70, *in* Appellants' App. at 623-24.
[7]     Order Overruling Objections at 2, *in* Appellants' App. at 752.
[8]     *Tr. of Dec. 12, 2016 Hearing* at 95, *in* Appellants' App. at 649.
[9]     *Id.* at 71-72, *in* Appellants' App. at 625-26; Order Overruling Objections at 2, *in* Appellants' App. at 752.

The Debtor filed a Chapter 11 petition on April 1, 2016. The parties'

characterizations of the relationship between the Debtor and the Appellants as well as the

causes of the bankruptcy are dramatically different. The Debtor contends that Colloid

failed to provide proper notice and documentation and that the manufacturing cost increase

was fabricated in order to drive the Debtor out of business and usurp its business. The

Debtor maintains it has claims against the Appellants for breach of contract, aiding and

abetting a breach of fiduciary duty, and fraud.[10] The Appellants claim that the Debtor

could not operate profitably in the face of a recent Supreme Court decision overturning

EPA regulations on mercury pollution, and therefore the Debtor's failure was market-

driven.[11]

Not long after it filed bankruptcy, the Debtor auctioned substantially all of its

assets, including intellectual property, leases, equipment, and accounts receivable. The

only bidder was the Funds, and the assets were assigned to a new entity named Novinda

Holdings, Inc.[12] After the sale, the only other material asset of the estate was the potential

litigation against the Appellants (Litigation Claims).[13] Without any realistic prospect for

rehabilitation, the Debtor filed a liquidating plan.[14] The Appellants objected to

confirmation of the plan and filed a motion to convert the case to one under Chapter 7

---

[10]    Appellee's Br. 4-6.

[11]    *Verified Complaint* at 14, *in* Appellants' App. at 66-67; Appellants' Reply Br. 4-5.

[12]    *Order Authorizing and Approving (I) the Sale of Certain Assets Free and Clear and (II) the Assumption and Assignment of Certain Executory Contracts and Waiving the 14-Day Stay of Fed. Bankr. P. 6004(h) and 6006(d)*, *in* Appellants' App. at 133.

[13]    Amended Plan at 5, *in* Appellants' App. at 732.

[14]    *Novinda Corp.'s Chapter 11 Plan of Liquidation*, *in* Appellants' App. at 295.

4

(Motion to Convert).[15] The Debtor then amended the proposed plan twice (Amended

Plan).[16]

The Amended Plan contained twelve different classes of claims, which are

summarized as follows:

**Class 1:** Class 1 consisted of the priority claims of eight former employees pursuant to § 507(a)(4) for accrued vacation leave. Class 1 claimants would be paid in full through 4 quarterly payments. This class was deemed "impaired" because claimants would not receive interest on the deferred payment of their claims.

**Class 2:** Class 2 consisted of secured creditors, who would receive the value of the property securing their claim, with any deficiency treated in Class 3.

**Class 3:** Class 3 consisted of unsecured trade claims (other than the Appellants) and the Funds' unsecured claims. The claims would be paid a pro rata distribution along with the Class 4 claims of the Appellants from any remaining funds left in the estate after payment of Classes 1 and 2 and satisfaction of estate expenses. The Funds' unsecured claims in this class were subordinated to the other Class 3 claims. Once all non-Funds unsecured trade claims were paid in full, the Funds would receive pro rata distributions along with Class 4 claims.

**Class 4:** Class 4 contained the Appellants' unsecured claims, which were to be paid a pro rata distribution as determined by the aggregate amount of Classes 3 and 4, but would not benefit from the Funds' voluntary subordination to the other claims in Class 3.

**Class 5:** Class 5 was the administrative convenience class and consisted of unsecured claims of $1000 or less, which would be paid at 70% shortly after the effective date of the Amended Plan. Any Class 3 or 4 claims could have elected to reduce their claim to $1000 and receive treatment pursuant to Class 5.

**Classes 6 – 12:** The remaining classes consisted of equity holders, which would be paid at different rates per share from any remaining funds available after payment of Classes 3 through 5.[17]

---

[15] *Motion to Convert Proceeding to a Liquidation Under Chapter 7 of the Bankruptcy Code*, *in* Appellants' App. at 387.
[16] *Novinda Corp.'s Second Amended Chapter 11 Plan of Liquidation*, *in* Appellants' App. at 725.
[17] *Id.* at 9-12, *in* Appellants' App. at 736-39.

The Amended Plan provided for the appointment of an administrator (Plan Administrator) to make distributions and investigate and pursue the Litigation Claims.[18] The Amended Plan further provided that the Funds would contribute $400,000 to the estate, which would be used for distributions under the Amended Plan. Up to $25,000 of the $400,000 could also be used to finance investigation of the Litigation Claims.[19] Essentially, Classes 3 and 4 were not guaranteed any distribution and would only recover meaningfully if the Plan Administrator prevailed on the Litigation Claims.

The Appellants objected to confirmation, arguing that (1) the Plan Administrator was biased in favor of the Funds; (2) the Plan was not feasible as creditor recovery was based on the outcome of speculative litigation; (3) Classes 3, 4, and 5 were unfairly discriminatory and were improperly classified for purposes of gerrymandering; and (4) the Amended Plan was not proposed in good faith.[20] The Bankruptcy Court overruled the Appellants' objections to the Amended Plan, denied the Motion to Convert in the Order Overruling Objections,[21] and confirmed the Amended Plan in the Confirmation Order.[22]

The Appellants timely appealed both the Order Overruling Objections and the Confirmation Order, which were joined for purposes of briefing and argument.[23] The Appellants sought a stay pending appeal in the Bankruptcy Court, which the Bankruptcy

---

[18] *Id.* at 1, *in* Appellants' App. at 728.
[19] *Id.* at 15, *in* Appellants' App. at 742; *Tr. of Dec. 12, 2016 Hearing* at 102, *in* Appellants' App. at 656.
[20] Order Overruling Objections at 4-7, *in* Appellants' App. at 754-57.
[21] *Id. at 1*, *in* Appellants' App. at 751.
[22] Confirmation Order, *in* Appellants' App. at 764.
[23] *Order Joining Appeals*, BAP ECF No. 11.

Court denied.[24] The Appellants also filed a motion for a stay pending appeal before the

Bankruptcy Appellate Panel and that motion was denied.[25]

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear appeals of final orders.[26] An order overruling

objections to confirmation and confirming a Chapter 11 plan is a final order for purposes

of 28 U.S.C. § 158(a).[27] This appeal raises four issues: (1) claims classification; (2) good

faith; (3) feasibility: and (4) unfair discrimination.

### A.    Claim Classification and Designation

There is no clear Tenth Circuit authority on the appropriate standard of review for

claims classification. Other circuits appear to have reached divergent conclusions on this

point.[28] The determination of the factors that justify separate classification of claims is a

---

[24]    *Order Denying Stay Pending Appeal*, Bankr. ECF No. 368.

[25]    *Order Denying Motion for Stay Pending Appeal*, BAP ECF No. 31 (denying motion for stay pending appeal finding Appellants made no showing that irreparable harm would occur absent a stay).

[26]    28 U.S.C. § 158(a)(1), (b)(1), and (c)(1).

[27]    *Interwest Bus. Equip., Inc. v. U.S. Trustee (In re Interwest Bus. Equip., Inc.)*, 23 F.3d 311, 315 (10th Cir. 1994) (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1355 (7th Cir. 1990)).

[28]    *Compare Steelcase Inc., v. Johnson (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994) ("We thus reaffirm our rule that a bankruptcy court's finding that a claim is or is not substantially similar to other claims, constitutes a finding of fact reviewable under the clearly erroneous standard."), *with Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1281 n.7 (5th Cir. 1991) ("Issues such as the similarity in priority and legal attributes and the ultimate question whether treatment in the same or separate classes is necessary, are legal issues reviewable by our court *de novo*.").

question of law reviewed *de novo*, but whether the requisite factors have been established is a question of fact reviewed for clear error.[29]

## B.    Good Faith

Whether a plan has been proposed in good faith under § 1129(a)(3) is a factual finding that this Court reviews for clear error.[30]

## C.    Feasibility

"Whether a plan is feasible is a question of fact, subject to the clearly erroneous standard on appeal from an order confirming the plan."[31]

## D.    Unfair Discrimination

The Bankruptcy Court's factual findings on the issue of unfair discrimination are reviewed for clear error, but if those "factual findings are premised on improper legal standards or on proper ones improperly applied, they are not entitled to the protection of the clearly erroneous standard, but are subject to *de novo* review."[32]

---

[29]    *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1230 (10th Cir. (2017) (reviewing *de novo* trial court's determination of the correct legal standard); *Jobin v. McKay (In re M & L Business Mach. Co., Inc.)*, 84 F.3d 1330, 1338 (10th Cir. 1996) (reviewing for clear error whether facts satisfy proper legal standard).

[30]    *Search Mkt. Direct, Inc. v. Jubber (In re Paige)*, 685 F.3d 1160, 1178 (10th Cir. 2012) (citing *In re 203 N. LaSalle St. P'ship,* 126 F.3d 955, 969 (7th Cir.1997)).

[31]    *F.H. Partners, L.P. v. Inv. Co. of the Sw., Inc. (In re Inv. Co. of the Sw., Inc.)*, 341 B.R. 298, 310 (10th Cir. BAP 2006) (citing *In re Pine Mountain, Ltd.*, 80 B.R. 171, 172 (9th Cir. BAP 1987)).

[32]    *Osborn v. Durant Bank & Tr. Co. (In re Osborn)*, 24 F.3d 1199, 1203 (10th Cir. 1994), *abrogated in part on other grounds by Eastman v. Union Pac. R.R.*, 493 F.3d 1151 (10th Cir. 2007).

### III. PRELIMINARY MATTERS

**A.    Equitable Mootness**

The Debtor has not filed a separate motion to dismiss the appeal, but in its brief, the Debtor argues this appeal is equitably moot and should be dismissed.[33] Although the Tenth Circuit has articulated a standard for application of the equitable mootness doctrine,[34] none of the Debtor's arguments are particularly compelling. More importantly, the Debtor has failed to properly place the issue before this Court. There is no motion to dismiss this appeal on equitable mootness grounds, and we will not address the issue further.

**B.    Attempts to Supplement to the Record on Appeal**

The Appellants filed a supplemental appendix which contains, in part, a Motion for Stay Pending Appeal Pursuant to Bankruptcy Rule 8007 and a Post Confirmation Quarterly Report, which are not properly part of the record on appeal.[35] The Debtor has not requested that these documents be stricken from the record.

After this appeal was fully briefed and taken under submission after oral argument, the Appellants filed a Motion to Supplement the Appendix (Motion),[36] requesting that the Court include in the record on appeal the Debtor's January 30, 2018 Post Confirmation Quarterly Report. The Debtor subsequently filed its objection to the Motion,[37] which

---

[33]    Appellee's Br. 10.
[34]    *See Search Mkt. Direct, Inc. v. Jubber (In re Paige)*, 584 F.3d 1327, 1339 (10th Cir. 2009).
[35]    Appellants' Supp. App. at 883, 894.
[36]    BAP ECF No. 69.
[37]    BAP ECF No. 72.

requested that the Court deny the Motion or, if the Court granted the Motion, allow the Debtor to also supplement the record with an affidavit from the Plan Administrator.

None of the documents in the supplemental appendixes existed at the time the Bankruptcy Court entered the Confirmation Order, which is on appeal, and therefore those documents could not have been considered by the Bankruptcy Court in issuing that decision. BAP Local Rule 8018-1(g) provides that "[o]nly documents properly before the bankruptcy court may be included in the appendix and considered by this Court."[38] The Tenth Circuit has made it clear that appellate courts should not review documents that were not before the trial court when the rulings at issue were made.[39] Accordingly, it is improper for this Court to review the documents supplementing the appendixes on appeal and the requests to supplement the appendix will be denied.

## IV. DISCUSSION

The Appellants assert that the Bankruptcy Court committed a number of errors when it confirmed the Amended Plan in the hope that this Court will find at least one of those asserted errors necessitates a reversal of the Bankruptcy Court's order. The Appellants assert that the Bankruptcy Court erred by permitting the separate classification of their claims, and argue that their treatment under the Amended Plan constitutes unfair discrimination prohibited by § 1129(b)(1).[40] They also contend that the Bankruptcy Court erred in finding the Amended Plan was feasible.

---

[38]   10th Cir. BAP L.R. 8018-1(g).

[39]   *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1549 n.1 (10th Cir. 1992).

[40]   Section 1129(b)(1) requires a bankruptcy court to confirm a Chapter 11 plan with non-accepting, impaired classes as long as the plan "does not discriminate unfairly, and is

10

## A.  Classification of Claims – § 1122(a)

The Appellants maintain that "[t]he Bankruptcy Court erred in holding that a chapter 11 liquidating plan that separately classifies one unsecured trade creditor from all others in order to facilitate an intra-class gift that excludes that unsecured trade creditor does not unfairly discriminate."[41] In so arguing, the Appellants conflate claims classification issues with unfair discrimination issues and mistakenly characterize the separate classification of their claims as unfair discrimination under § 1129(b). The Appellants mistakenly argue that before a court approves a classification scheme it must consider whether the classification complies with § 1129(b). But § 1129(b) does not address classification of claims; it focuses instead on whether a plan unfairly discriminates and is fair and equitable with respect to each "class of claims."[42] By contrast, claim classification is addressed in § 1122. In other words, § 1122 deals with the creation of classes of claims, while § 1129(b) deals with the treatment of those classes. While § 1123(a)(4) requires each creditor in a class to receive the same treatment—unless a creditor agrees to less favorable treatment—there is no requirement that creditors in different classes receive the same treatment.

In reviewing classification schemes, bankruptcy judges are given limited guidance from the Bankruptcy Code itself. Section 1122(a) provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to

---

fair and equitable, with respect to each class of claims . . . that is impaired under, and has not accepted, the plan."

[41]    Appellants' Br. 1.
[42]    11 U.S.C. § 1129(b)(1).

the other claims or interests of such class."[43] As a result, a plan proponent cannot place

dissimilar claims together in the same class, such as secured claims with unsecured claims,

or priority unsecured claims with non-priority unsecured claims. But § 1122(a) does not

require the converse—that similar claims be placed in the same class.[44] Accordingly,

courts generally permit separate classification of similar claims, subject to certain caveats,

the most prominent of which is the axiom that separate classification may not be used to

gerrymander the vote on plan confirmation. Bankruptcy courts have consistently adhered

to this "one clear rule,"[45] i.e., debtors may not separately classify claims under § 1122 for

the purposes of obtaining an impaired consenting class under § 1129(a)(10).[46] Some courts

have reasoned that once a plan proponent has shown that substantially similar claims were

not separately classified to gerrymander a consenting class of impaired claims, the court

need not make any further inquiry into whether the separate classification of similar claims

violates § 1122(a) and the remaining confirmation issues should be addressed under

---

[43]    11 U.S.C. § 1122(a).

[44]    *In re City of Colo. Springs Spring Creek Gen. Improvement Dist.*, 187 B.R 683, 687 (Bankr. D. Colo. 1995) ("There is no requirement that all substantially similar claims be placed in the same class nor is there a prohibition against classifying substantially similar claims separately.").

[45]    *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1991) (holding that one clear rule has emerged from § 1122(a) case law).

[46]    *In re Autterson*, 547 B.R. 372, 397-98 (Bankr. D. Colo. 2016); *see also CRE/ADC Venture 2013, LLC v. Rocky Mountain Land Co. (In re Rocky Mountain Land Co.)*, No. 12-21643, 2014 WL 1338292, at *15 (Bankr. D. Colo. Apr. 3, 2014). *But see In re City of Colo. Springs Spring Creek Gen. Improvement Dist.*, 187 B.R at 689 (explaining that gerrymandering is an issue addressed under the unfair discrimination analysis of § 1129(b)). A prerequisite to plan confirmation, § 1129(a)(10) requires that if there is an impaired class, at least one non-insider impaired class must accept the plan.

§ 1129.[47] But most courts impose the additional requirement that there be a reasonable basis or legitimate business or economic justification for the separate classification of similar claims.[48] There is no controlling Tenth Circuit law on this issue, but that is not critical to our decision because the Debtor has shown a reasonable basis to separately classify the Appellants' claims.

### 1. The Debtor Has Shown That Unsecured Claims Were Not Separately Classified to Gerrymander an Impaired Consenting Class

The Appellants contend that the Debtor gerrymandered voting on the Amended Plan by separately classifying their claims. They object to both the establishment of an administrative convenience class in Class 5 and the separate classification of their claims in Class 4. They further contend that the creditors in Classes 3, 4, and 5 should all be placed into the same class and that they have been separated only to manipulate voting results. The Bankruptcy Court was not persuaded by this argument. It instead correctly concluded that the Debtor did not have to separately classify the claims in Classes 3, 4, and 5 in order to satisfy § 1129(a)(10) because the Debtor was reasonably certain it could fulfill this requirement through an affirmative vote of Class 1.

The separate classification of the priority wage claims in Class 1 was completely appropriate—even necessary—because the wage claims were not substantially similar to other claims. Since Class 1's claims, consisting of employee priority claims pursuant to

---

[47]    *In re Deming Hospitality, LLC*, No. 11-12-13377TA, 2013 WL 1397458, at *3 (Bankr. D.N.M. Apr. 5, 2013); *see also In re Rocky Mountain Land Co.*, 2014 WL 1338292, at *15 (agreeing with *Deming*).

[48]    *See In re Hyatt*, 509 B.R. 707, 715 n.8 (Bankr. D.N.M. 2014) (collecting cases).

13

§ 507(a)(4), should not be classified with general unsecured claims, the Appellants cannot seriously contend that Class 1 was created to gerrymander voting on the plan. The Bankruptcy Court found that Class 1 served as the impaired consenting class for purposes of § 1129(a)(10).[49] It also determined the employees in the class were not insiders.[50] Evidence in the record supports this finding.[51] In fact, the Appellants even stipulated that the Debtor's evidence met § 1129(a)(10)'s burden to obtain the accepting vote of at least one impaired class.[52] Once a plan has been accepted by an impaired class of claims that was not created for gerrymandering purposes, any claims of gerrymandered voting have little relevance under § 1129(a)(10).

### 2. The Administrative Convenience Claims Are Properly Classified in a Separate Class

Section 1122(b) expressly permits a plan proponent to "designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience."[53] The Amended Plan designated Class 5 as the administrative convenience class. Notwithstanding the Bankruptcy Code's express authorization of convenience class claims, the Appellants contend that Class 5 was established for vote manipulation purposes rather than to serve a legitimate need for administrative convenience.

---

[49]     Order Overruling Objections at 9, *in* Appellants' App. at 779.
[50]     *Id.*, *in* Appellants' App. at 779.
[51]     *Tr. of Dec. 12, 2016 Hearing* at 49-51, *in* Appellants' App. at 603-05.
[52]     *Id.* at 124, *in* Appellant's App. at 678.
[53]     11 U.S.C. § 1122(b).

While the Bankruptcy Court acknowledged that nine creditors is a relatively small number and understood why the Appellants questioned whether this separate class was truly necessary, it expressly found that there was no gerrymandering purpose behind the Debtor's creation of this separate class. After considering the testimony of the Debtor's witnesses, the Bankruptcy Court was convinced that a separate class would be beneficial to the estate, if for no other reason than to eliminate meddlesome interference absorbing the Plan Administrator's time. The Bankruptcy Court concluded that the record established that the Plan Administrator agreed to his compensation structure based in part on the understanding that the small claims would be repaid quickly. Moreover, although Class 5 voted in favor of the Amended Plan, the Debtor did not need the class to satisfy the requirement of an impaired accepting class. The Debtor was reasonably certain that it could fulfill this requirement with the Class 1 vote. The record supports the conclusion that Class 5's creation did not violate the one clear rule prohibiting gerrymandering.

### 3. There Is a Reasonable Basis for the Classification of Claims in Class 3 and Class 4

After finding that the Debtor did not separately classify Classes 1 or 5 to obtain an impaired accepting class, the Bankruptcy Court also determined there were sound business reasons to separately classify Classes 3 and 4.

### a. The Appellants' Non-Creditor Interest Justified Separate Classification

The Appellants argue that the Bankruptcy Court erred in allowing the separate classification of Class 4 as a "bypass"[54] of designation under § 1126(e), which permits a

---

[54] Appellants' Br. 7.

bankruptcy court "to disqualify . . . any acceptance or rejection that was not made in good faith."[55] Essentially, the Appellants contend that the Debtor was first required to classify their claims with the other unsecured creditors and then had to separately move to designate their votes, with the attendant evidentiary hearing such a motion would require. The Debtor argues that it is the Appellants' "non-creditor"[56] interest that justifies the separate classification of their claims and the Debtor did not rely on a bypass of § 1126(e) to justify the separate classification of those claims. We agree with the Debtor.

The Bankruptcy Court did discuss § 1126(e) but did not attempt to apply this section as part of the justification for separate classification of the Appellants' claims. The Bankruptcy Court did not make a specific finding that the Appellants' votes were not cast in good faith but simply noted that their actions might provide a basis to seek designation of their claims. What the Bankruptcy Court did acknowledge is that "courts have recognized that separate classification of a claim [whose holder's vote] would likely be cast for 'ulterior motives' is permissible. They have done so specifically when the creditor was a litigation target." [57] The Bankruptcy Court then made specific factual findings of its

> definite and firm conviction that [the Appellants'] motivations in this case
> have been two-fold. [They] sought for a long period of time to force the

---

[55]    7 Collier on Bankruptcy ¶ 1126.06 (Richard Levin & Henry J. Sommer eds., 16th ed.). The good faith inquiry asks whether the creditor cast its vote "for the ulterior purpose of securing some advantage to which [it] was not otherwise entitled." *Id.* at ¶ 1126.06[1].
[56]    Appellee's Br. 19.
[57]    Order Overruling Objections at 10, *in* Appellants' App. at 760. (first citing *Save Our Springs (S.O.S.) Alliance, Inc. v. WSI (II)-COS, L.L.C. (In re Save Our Springs (S.O.S.) Alliance, Inc.)*, 632 F.3d 168, 174-75 (5th Cir. 2011) (acknowledging that the desire to avoid litigation can be a non-creditor interest justifying separate classification, but finding no evidence that such a motivation existed in that case) and then citing *In re Heritage Org., L.L.C.*, 375 B.R. 230, 300 (Bankr. N.D. Tex. 2007)).

> Debtor into a position where its business would fold and [they] could usurp [it]. Most recently, [the Appellants] ha[ve] attempted to thwart the Debtor's reorganization in order to avoid becoming a litigation target.[58]

The Bankruptcy Court based its conviction on evidence of the Appellants' dealings with the Debtor prepetition, as well as its own observations of their actions in the bankruptcy case. The Bankruptcy Court then specifically found that "[the Appellants'] actions in this bankruptcy case have demonstrated that [they have] not been pursuing a legitimate interest in maximizing [their] recovery as a creditor. Thus, separate classification of [their] claim[s] was warranted under the circumstances of this case."[59] We find no error in the Bankruptcy Court's legal conclusion that a creditor voting a non-creditor interest may be separately classified and its factual finding that the Appellants were not voting their creditor interests.

### b. Preserving the Potential Equitable Subordination of the Appellants' Claims Supports Separate Classification

The Debtor articulated a legitimate concern that placing the Appellants in Class 3 might inadvertently waive any claim the Debtor has for equitable subordination of their claims. Section 1123(a)(4) states that a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."[60] The Funds have agreed to less favorable treatment within Class 3 by means of consensual subordination. The Appellants have not agreed to subordination of their claims. If the Appellants' claims

---

[58]    *Id.* at 11, *in* Appellants' App. at 781.
[59]    *Id.*, *in* Appellants' App. at 781.
[60]    11 U.S.C. § 1123(a)(4).

were placed in Class 3, § 1123(a)(4) would require the Debtor to provide them with the same treatment as the trade debt. If the Debtor did so, the Plan Administrator may later be estopped from attempting through litigation to undo the Amended Plan's binding treatment of these claims.

The Bankruptcy Court considered the potential impact that the precedents of *County of Orange*[61] and *Chateaugay*[62] may have on the Debtor's subordination claims against the Appellants. In these cases, the court refused to entertain post-confirmation subordination claims where the plan provided for the same treatment for all claims in the class. As the Appellants argue, *County of Orange* and *Chateaugay* may be distinguishable in that the debtors there did not mention their intent to pursue equitable subordination claims in the plan or disclosure statement. But the Appellants' argument is of little importance. The Bankruptcy Court expressed no opinion as to whether the separate classification of the Appellants' claims *would* avoid waiver issues. However, the Bankruptcy Court concluded that placing the Appellants in the same class would likely create a waiver issue and, thus, there was a sufficient justification for the separate classification. In other words, all the Bankruptcy Court determined was that these cases create a potential barrier to subordinating the Appellants' claims, which separate classification may avoid, and that concern was a reasonable basis to separately classify those claims.

---

[61]    *In re Cty. of Orange*, 219 B.R. 543 (Bankr. C.D. Cal. 1997).
[62]    *LTV Steel Co. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.)*, No. 93-8444A, 1993 WL 563068 (Bankr. S.D.N.Y. Dec. 27, 1993).

The Appellants contend that the Bankruptcy Court erred when it found that the Funds' desire to create goodwill with trade creditors was one of the reasons the Debtor articulated for separately classifying their claims. The Debtor does not argue that this reason supports separate classification of the Appellants' claims. The Bankruptcy Court recognized that this business justification is not akin to those cases in which the debtor itself has a strong business reason to provide preferential treatment to certain creditors in order to enhance its reorganization prospects.[63] The Bankruptcy Court also observed that maintaining goodwill was "of vital concern to the Funds[,] and the Debtor needs the Funds in order to fund its plan obligations."[64] However, it is not clear that the Bankruptcy Court held that this reason, articulated by the Debtor, justified separate classification. Any error in the Bankruptcy Court's ruling on this issue is harmless error because the Debtor had already demonstrated other reasonable grounds for separately classifying the Appellants' claims.

**B.    The Amended Plan Does Not Unfairly Discriminate Against the Appellants' Claims**

Although the Appellants have raised several issues, the overarching complaint that they have with the Amended Plan is that they don't like their treatment and believe it is unfair. In their appellate brief, the Appellants have misstated the Bankruptcy Court's ruling. They accuse the Bankruptcy Court of bypassing the prohibition against unfair discrimination in § 1129(b)(1) by "reading language into [§] 1123(a)(4) . . . that a creditor

---

[63]    *See, e.g.*, *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109, 114 (Bankr. N.D. Tex. 2002).

[64]    Order Overruling Objections at 10, *in* Appellants' App. at 760.

who agrees to less favorable treatment can dictate the beneficiaries of that treatment."[65] It appears that the Appellants' position is that a creditor's agreement to less favorable treatment, as permitted by § 1123(a)(4), necessarily requires an analysis of unfair discrimination under § 1129(b)(1). The record shows that the Amended Plan is consistent with § 1123(a)(4), which requires a plan to "provide the same treatment for each claim . . . of a particular class, unless the holder of a particular claim . . . agrees to a less favorable treatment."[66] A creditor's agreement to less favorable treatment pursuant to § 1123(a)(4) necessarily results in more favorable treatment of other creditors in the class, but that does not necessarily implicate § 1129(b)(1).

Even so, the Amended Plan is also consistent with § 1129(b)(1). Section 1129(b) states that "the court . . . shall confirm the plan notwithstanding the requirements of [§ 1129(a)(8)] if the plan does not discriminate unfairly, . . . with respect to each class . . . that is impaired under, and has not accepted, the plan."[67] The Code does not define unfair discrimination, and the Tenth Circuit has not spoken on what constitutes unfair discrimination, but the language of the Code dictates that unfair discrimination is more than simply making a distinction between claims. As a general rule, the unfair discrimination standard "ensures that a dissenting *class* will receive relative value equal to

---

[65]    Appellants' Br. 7.
[66]    11 U.S.C. § 1123(a)(4).
[67]    11 U.S.C. § 1129(b).

20

the value given to all other similarly situated *classes*."[68] Several courts have adopted a test

that creates a rebuttable presumption of unfair discrimination when there is:

> (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution.[69]

The Bankruptcy Court found that the Funds' agreement to subordinate payment of

its claim may allow the other Class 3 claimants to be paid sooner than they would be

absent subordination, but also found that the Appellants' distribution would not be

diminished or delayed by this provision. In other words, Class 4's percentage recovery will

not be lower than Class 3's, and Class 4 does not bear a materially greater risk than Class

3. Class 4 will receive the same pro rata distribution that Class 3 will receive at the same

time. Both classes must still be paid in full before any equity interest classes will receive

anything. The Appellants will not receive the same treatment that Class 3 trade creditors

will receive, but that is not inequitable or unfair to Class 4, and the Amended Plan does not

unfairly discriminate between Class 3 and Class 4.

The Appellants have also argued that the Amended Plan was not proposed in good

faith. They assert that the separate classification and the different treatment of their claims

---

[68]   *In re Armstrong World Indus., Inc.*, 348 B.R. 111, 121 (D. Del. 2006) (quoting *In re Johns–Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) (emphasis added); *see also In re Stratford Assocs. Ltd. P'Ship*, 145 B.R. 689, 700 (Bankr. D. Kan. 1992) ("While the Plan discriminates, to violate § 1129(b)(1), the discrimination must be *unfair*.").
[69]   *In re Armstrong World Indus., Inc.*, 348 B.R. at 121 (quoting *In re Dow Corning Corp.*, 244 B.R. 696, 702 (Bankr. E.D. Mich. 1999)).

establish a lack of good faith. But the separate classification of the Appellants' claims was appropriate and there was no unfair discrimination with respect to Class 4. The Appellants cannot rely solely on these arguments to establish that the Amended Plan was not proposed in good faith and they have not advanced any other arguments on this issue. The Bankruptcy Court found that the Amended Plan was proposed in good faith, and we do not find clear error in that finding.

**C.      The Bankruptcy Court Properly Determined That the Amended Plan Is Feasible**

Section 1129(a)(11) requires a finding that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, . . . unless such liquidation or reorganization is proposed in the plan."[70] "In determining whether a plan is feasible, the Bankruptcy Court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable."[71] "The purpose of the feasibility test is to determine whether there is a reasonable probability that creditors will receive the payments provided for in the plan."[72] One school of thought is that feasibility need not be established whenever liquidation is proposed in the plan.[73] "Other courts take a broader approach and apply the feasibility test to plans of liquidation, focusing their analysis on whether the liquidation itself, as proposed in the plan, is

---

[70]      11 U.S.C. § 1129(a)(11).
[71]      *Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.)*, 779 F.2d 1456, 1460 (10th Cir. 1985) (quoting *Prudential Ins. Co. of Am. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 1341 (8th Cir. 1985)).
[72]      *In re Trenton Ridge Inv'rs., LLC*, 461 B.R. 440, 478 (Bankr. S.D. Ohio 2011) (citing *In re G-I Holdings Inc.*, 420 B.R. 216, 267 (D.N.J. 2009)).
[73]      *In re Heritage Org., L.L.C.*, 375 B.R. 230, 311 (Bankr. N.D. Tex. 2007).

feasible."[74] The Bankruptcy Court determined that the Amended Plan proposed liquidation and, despite noting case law suggesting that a feasibility inquiry is unnecessary for a liquidating plan, considered whether the proposed liquidation was feasible.

The Appellants assign error based on the speculative nature of recovery on the Litigation Claims, relying on the Third Circuit's *In re American Capital Equipment, LLC*.[75] The Appellants contend that creditor recovery is based on litigation outcomes and, as a result, the Amended Plan is per se too speculative to be confirmed. Although *American Capital* was similar to this case in that the plan included sum certain sources of funding, *American Capital* involved more moving parts than just successful litigation—it required asbestos claim litigants to settle their claims and consent to a portion of the debtors' insurance recovery being paid to other creditors, and the debtors admitted that they could not fund any repayment of creditors without the imposition of the surcharge. The court found such a funding source to be "wholly speculative."[76]

Here, the Bankruptcy Court found that the Amended Plan was feasible because it was not contingent on the Plan Administrator bringing the Litigation Claims or the outcome of any litigation. As the Bankruptcy Court noted, in this case $400,000 would be made available to the Plan Administrator for payment of priority claims. This funding may be augmented by recovery of alleged overpayments of sales taxes and certain refunds

---

[74]   *Id.*

[75]   Appellants' Br. 28 (quoting *In re Am. Capital Equip., LLC*, 688 F. 3d 145, 156 (3d Cir. 2012) (stating "a plan is not 'feasible if the success hinges on future litigation that is uncertain and speculative'")).

[76]   *In re Am. Capital Equip., LLC*, 688 F.3d at 156.

allegedly due from the Appellants, but whether the Debtor is successful in recovering overpayments, it has the certainty of plan funding from the Funds. The only restriction on the use of these funds is to limit to $25,000 any investigation of claims against the Funds.

The Bankruptcy Court also relied on *In re Heritage Organization, L.L.C.*,[77] to reach the conclusion that the liquidating Amended Plan is feasible because "the successful performance of its terms is not dependent or contingent upon any future, uncertain event."[78] This Court holds that the Bankruptcy Court did not commit clear error in concluding that the Amended Plan is feasible. While other courts have held that Chapter 11 plans that rely on litigation settlements or judgments as the primary sources of funding are likely not feasible,[79] in this case the Bankruptcy Court found the primary source of funding was the Funds' $400,000 contribution. That was not clear error.

## V. CONCLUSION

In the end, it is clear that the Appellants' real complaint is that a plan they did not want was confirmed. The Appellants would rather the case be converted to Chapter 7 where unsecured claims would not receive anything unless the trustee were successful in pursuing litigation against them. A Chapter 7 trustee, however, would not have the benefit of the $400,000 contribution to fund payment of Classes 1, 2, and 5, nor a war chest for

---

[77] 375 B.R. 230 (Bankr. N.D. Tex. 2007).

[78] *Id.* at 311.

[79] *E.g., In re WR Grace & Co.*, 729 F.3d 332, 348-49 (3d Cir. 2013) (stating court will not find plan feasible if it hinges on speculative litigation); *In re Slabbed New Media, LLC*, 557 B.R. 911, 916-17 (Bankr. S.D. Miss. 2016) (citing numerous cases suggesting plans relying on litigation proceeds are not feasible); *In re Applied Safety, Inc.*, 200 B.R. 576, 584 (Bankr. E.D. Penn. 1996) (explaining that plan was likely unconfirmable where debtor could not evidence capital to fund litigation).

litigation. Perhaps this is why the Appellants so adamantly seek conversion over confirmation. As the primary litigation target, they would undoubtedly prefer a trustee unfamiliar with the case and without any kitty to pursue litigation.

The record supports the Bankruptcy Court's findings regarding the separate classification of Class 3 and Class 4. The Amended Plan was proposed in good faith, does not unfairly discriminate against the Appellants' claims, and is feasible. Accordingly, the Bankruptcy Court did not err. The Bankruptcy Court's decision is AFFIRMED.